[Civ. No. 20961. First Dist., Div. Two. Oct. 19, 1964.]

BESSIE W. KRAMER, Plaintiff and Respondent, v. JACK FERGUSON et al., Defendants and Appellants.

[Civ. No. 20962. First Dist., Div. Two. Oct. 19, 1964.]

BESSIE W. KRAMER, Plaintiff and Appellant, v. JACK FERGUSON et al., Defendants and Respondents.

[Civ. No. 20963. First Dist., Div. Two. Oct. 19, 1964.]

THOMAS A. DORNEY, Plaintiff and Respondent, v. JACK FERGUSON et al., Defendants and Appellants.

[Civ. No. 20964. First Dist., Div. Two. Oct. 19, 1964.]

THOMAS A. DORNEY, Plaintiff and Appellant, v. JACK FERGUSON et al., Defendants and Respondents.

(Consolidated Cases.)

Cominos & Shostak, Lawrence Shostak and Jack K. Berman for Plaintiffs and Appellants and Plaintiffs and Respondents.

Cooper, White & Cooper, Sheldon G. Cooper, Twohig, Weingarten & Haas, Thomas J. Twohig, James B. Schnake and George F. Duke for Defendants and Appellants and Defendants and Respondents.

AGEE, J.—Twelve of the twenty defendants in each of these two consolidated libel actions appeal from judgments entered upon jury verdicts in favor of the two respective plaintiffs. Two of the original defendants were voluntarily dismissed by plaintiffs during the trial. Two others received favorable verdicts. Four others have not appealed from the judgments against them.

 Plaintiffs were members of the City Council of the City of Seaside. The allegedly libelous matter caused to be published by defendants consists of (1) statements made in the notice of intention to circulate petitions to recall the two plaintiffs (Elec. Code, § 27504) ; (2) a letter urging the recall, sent to many voters in Seaside and published in a newspaper ; and (3) a cartoon poster publicly displayed in various places in Seaside.

The notice and the letter charged that plaintiffs had violated the law by acting in their official capacity in matters in which they had a personal interest, that plaintiffs had endeavored to use their positions as public officials to affect the outcome of "several court trials during the past year," and that each "is incompetent to serve in such a capacity [as councilman] and has perpetrated a breach of faith upon the voters of this city."

The letter contains the following amplification: "They [plaintiffs] have repeatedly voted on issues in which they have a direct financial interest—despite warnings from the city attorney that such conduct is illegal."

The poster depicts the plaintiffs as puppets on strings and being controlled by the hand of an unidentified puppeteer. The poster urges the recall of "Dorney and Kramer" (plaintiffs) and asks the question, "Tired of Puppets in Your City Government?" The letter charges that "Mrs. Kramer and Mr. Dorney are not masters of their own fate—that they are, in fact, the dupes of a most undesirable element in Seaside."

The notice of intention and the letter leave little doubt that plaintiffs are charged with being the willing tools of a faction led by one Pat Patterson, whose objective "is to gain control of the City government for the purpose of exploiting the community for their own personal gain."

We recognize that a wide latitude is permitted in conveying pertinent information to the public, particularly in controversies of a political nature. (*Corman* v. *Blanchard*, 211 Cal.App.2d 126, 136-137 [27 Cal.Rptr. 327]; *Howard* v. *Southern Cal. Associated Newspapers*, 95 Cal.App.2d 580, 584 [213 P.2d 399].)

However, we have concluded from our own independent examination that the publications herein, on their face, clearly impute dishonesty and corruption to the plaintiffs and that they are libelous per se. (Civ. Code. § 45a; 2 Witkin, Summary of Cal. Law, Torts, § 109, pp. 1280-1282.)

Even so, such utterances are not actionable *unless* made with malice. (*Snively* v. *Record Publishing Co.*, 185 Cal. 565 [198 P. 1].) This qualified or conditional privilege is conferred by subdivision 3 of section 47 of the Civil Code upon a communication made without malice "to a person interested therein, . . . by one who is also interested," on an occasion which would ordinarily afford reasonable grounds for supposing that it was made from innocent motives.

A citizen is deemed to be "a person interested therein" within the meaning of the statute. (*Snively* v. *Record Publishing Co., supra*, at p. 572.)

Defendants' contention that this privilege should be absolute with respect to recall proceedings was rejected in *Gunsul* v. *Ray*, 6 Cal.App.2d 528 [45 P.2d 248]. The court therein held that a statement filed with the City Clerk of Long Beach in connection with a recall election came within the qualified privilege provisions of Civil Code section 47, subdivision 3, to the exclusion of the absolute privilege accorded to a legislative, judicial, or "any other official proceeding authorized by law; . . ." (Civ. Code, § 47, subd. 2).

Such an interpretation of subdivision 2 was followed in

*McMann* v. *Wadler*, 189 Cal.App.2d 124, 129 [11 Cal.Rptr. 37], wherein the court stated that "the 'official proceeding' embraced in the purview of the statute is that which resembles judicial and legislative proceedings, such as transactions of administrative boards and quasi-judicial and quasi-legislative proceedings . . . ." While it is true that the cited case involves a meeting of the board of directors of a nonprofit corporation, it is significant that *Gunsul* v. *Ray, supra,* was cited by the court in support of the foregoing statement.

In the recent case of *New York Times Co.* v. *Sullivan,* 376 U.S. 254, 279-280 [84 S.Ct. 710, 726, 11 L.Ed.2d 686, 706], the United States Supreme Court, speaking through Justice Brennan, stated that "The constitutional guarantees [freedom of speech and press] require, we think, a federal rule that prohibits a public official from recovering damages for a defamatory falsehood relating to his official conduct *unless* he proves that the statement was made with 'actual malice'— that is, with knowledge that it was false or with reckless disregard of whether it was false or not." (Italics added.)

The court went on to state that "a like rule . . . has been adopted by a number of state courts." *Snively* v. *Record Publishing Co., supra,* was cited as being one of the decisions in accord with this rule. (Footnote 20.)

Justices Black, Douglas and Goldberg concurred in the result reached but were of the opinion that a rule of absolute privilege should be applied. Justice Goldberg stated: "In my view, the First and Fourteenth Amendments to the Constitution afford to the citizen and to the press an absolute, unconditional privilege to criticize official conduct despite the harm which may flow from excesses and abuses." (376 U. S. at p. 298 [84 S.Ct. at p. 735, 11 L.Ed.2d at p. 719].)

The California Supreme Court, in considering a "purity of elections" statute had occasion to comment upon the *Times* decision and also to cite *Snively, supra,* in support of the statement that California recognizes "the importance of criticism of the conduct of public officials in the administration of their offices." (*Canon* v. *Justice Court,* 61 Cal.2d 446, 457 [39 Cal.Rptr. 228, 393 P.2d 428].)

There is nothing in the *Canon* opinion that indicates any criticism of the rule as stated by Justice Brennan in *Times* or as stated by our Supreme Court in *Snively.* In discussing the difference between the interests at stake in a libel case and those involved in the enforcement of a purity of elections statute, Justice Peters, speaking for the court, stated: "In

the former [libel case], we juxtapose against free speech the risk of harm to the reputation of an individual. Even here, the majority permit redress *if there is present actual malice.*" (P. 458.) (Italics ours.)

We hold that defendants are entitled to the protection of a qualified privilege only.

*Instructions on privilege.* The trial court refused to instruct the jury that the three writings in question were qualifiedly privileged as a matter of law. This was error.

"Where the facts and circumstances under which a defamatory publication is made are not disputed, the question of privilege is one of law. [Citations.]" (*Freeman* v. *Mills*, 97 Cal.App.2d 161, 166 [217 P.2d 697].)

The instruction requested is as follows: "The publications herein are privileged within the meaning of subdivision 3 of Section 47 of the Civil Code, being a publication by one who is also interested to a person interested." Neither this instruction nor one of similar import was given.

The court went only so far as to define a qualifiedly privileged publication, in the language of said subdivision 3, as being one "made in a communication, without malice, to a person interested therein (1) by one who is also interested, or (2) by one who stands in such a relation to the person interested as to afford a reasonable ground for supposing the motive for the communication innocent, or (3) who is requested by the person interested to give the information."

The court commented that "there are three parts in this section [47], but you are only concerned with the third subdivision."

No instruction other than the reading of subdivision 3 was given as to what constitutes a qualifiedly privileged communication. The court refused to give the following requested instruction, which is phrased in the language of the opinion in *Snively* v. *Record Publishing Co.*, 185 Cal. 565, 572 [198 P. 1]: "[T]he conduct of public officers in the administration of their offices is a matter in which every citizen of the community which they serve is interested, [and] the publication in question, if otherwise privileged [i.e., without malice], must be considered as one made to persons interested, and on an occasion which would ordinarily afford reasonable grounds for supposing that it was made from innocent motives."

The trial court made the following notation on this requested instruction: "Let Jury decide. Subject covered elsewhere." However the subject was not covered elsewhere and

the jury should not have been required to decide whether the publications came within the purview of subdivision 3, since, as we have stated, the publications in question were qualifiedly privileged as a matter of law.

While plaintiffs do not question that these publications fall within the category defined in subdivision 3, it does not follow that the lay persons comprising the jury did so find.

Plaintiffs quote at length from the instructions given and state that "the jury was clearly advised that the qualified privilege existed." A more accurate statement would be that the jury was advised that the *defense* of qualified privilege existed and was *available* to appellants *if* the jury first found that the communications in question came within the classification described in subdivision 3 of Civil Code section 47.

Plaintiffs requested and the court gave the following instruction: "If the jury find that the matter published was libelous, the persons libeled are entitled to damages, unless the jury find that the matter published is true *and* privileged." (Italics added.)

The use of "and" in this instruction is obvious error. "The defense of privilege under subdivision 3 of section 47 does not depend at all on the truth of the defamatory charge." (*Snively* v. *Record Publishing Co., supra,* at p. 574.) However, it is hardly possible that the jury did not know from other instructions given that, if it found that the matter published was either true *or* privileged, plaintiffs could not recover.

The real vice of this instruction, as well as the charge as a whole, is that it left for the jury to determine whether the privilege accorded by subdivision 3 of section 47 did or did not attach to the communications in question.

The court should have instructed the jury that the law gives to one who publishes this type of communication a privilege to do so and that the only issue for it to determine in this respect was whether the communication was made with malice, in which event the privilege was lost. On the contrary, the instructions left it for the jury to determine whether the qualified privilege ever did or did not exist.

In denying plaintiffs' motion to strike the allegations of privilege from the defendants' answers on the ground of noncompliance with sections 12047 and 12048 of the Elections Code, the court made the following ruling: "The motion to strike the affirmative defense [privilege] is denied. It is not

a ruling that there *is* a qualified privilege, no. That is not the same thing at all. It is merely that you do not *eliminate the defense* of qualified privilege . . .'' (italics added).

This statement by the trial court indicates its opinion that the communications herein were not qualifiedly privileged as a matter of law but that this was a factual issue to be determined by the jury. That this erroneous conception was carried over into the instructions and resulted in confusing the jury on the issue of privilege is demonstrated by the record.

On the first of the two days of its deliberations, the jury returned to the courtroom and asked for ''a better description of the word 'malice,' and what is intended by the word 'malice,' and also more knowledge on 'qualified privilege.' '' The court replied: ''I don't know that I can give you any more. I can read what we have here.'' A number of the original instructions were then read, without addition or correction.

It is apparent that the jury was having difficulty determining the issue of qualified privilege when it never should have been burdened with the legal aspect of such issue at all. As stated above, its task should have been limited in this respect to a determination of the factual issue of malice.

We have no legal method by which to establish whether the jury determined that the communications were or were not qualifiedly privileged. Certain jurors filed declarations in opposition to defendants' contention on motion for new trial that the various amounts of punitive damages awarded were arrived at by the use of the ''pooling plan.'' These declarations can only be considered for the limited purpose specified in subdivision 2 of section 657 of the Code of Civil Procedure and cannot be used to otherwise impeach or interpret the verdicts.

However, the jury awarded *punitive* damages in both actions against defendants Ferguson, Cantu, Pattullo, Anderson, Hambrook, Underwood, Brooks, Hartman and Craige.

Such awards carry with them by necessary implication a finding that these defendants acted with malice. The presence of such malice destroys the qualified privilege. Hence, the trial court's refusal to instruct the jury that the communications in question were qualifiedly privileged as a matter of law becomes harmless error as to these nine defendants.

*Instructions on conspiracy.* At the request of plaintiffs, the court instructed the jury on conspiracy in language almost identical to that in CALJIC on criminal conspiracy. (Nos. 931, 932, 933, 934 alternate, 938, 941 and 944.)

Plaintiffs did not plead conspiracy,[1] it was not listed as one of the issues in the pretrial order, and the record does not show that the case was tried on that theory.

 We do not approve of the use of such terms as ''criminal,'' ''confederate,'' ''unlawful confederacy,'' and ''accused parties'' in civil jury instructions. However, where but one tort or wrong is alleged, it makes little difference whether the defendants charged with its commission are called joint tortfeasors or conspirators. (See 2 Witkin, Summary of Cal. Law, Torts, § 15, pp. 1184-1185.)

 In the instant action, plaintiffs pleaded three separate causes of action based upon three separate alleged libels and prayed for separate damage awards as to each of the three causes. The first cause alleges that the defendants named therein ''did sign and circulate a document entitled 'NOTICE OF INTENTION TO CIRCULATE A PETITION' . . . .'' The second cause alleges that the defendants named therein ''composed and caused to be published'' a letter. The third cause of action alleges that the defendants named therein ''composed and caused to be published'' a poster.

It is evident that plaintiffs' pleadings are based upon the premise that each of the three alleged libels constitutes a separate tort and that, in order to impose liability upon a defendant as to a particular cause of action, he must not only be charged therein but the proof must show his legal responsibility for the commission of that particular tort.

Contrary to this, the conspiracy instructions told the jury that, if a defendant was found to be a member of a conspiracy he would be liable for *every* act done in furtherance of the conspiracy even though such act was not a part of the original plan and he was not present at the time of the commission of such act.[2]

---

[1] We are mindful that words such as ''conspire'' and ''conspiracy'' need not be used in charging a civil conspiracy. (*Farr* v. *Bramblett,* 132 Cal.App.2d 36, 47 [281 P.2d 372], wherein the allegation that defendants ''did agree together'' was held to be sufficient.)

[2] E.g., ''Where a conspiracy has been formed, each of the persons forming the same, while he is a member thereof, is liable for every act and is bound by the acts and declarations of each and all of the conspirators done or made in pursuance and furtherance of the said conspiracy, and continues to be so liable and bound for so long as he remains a member thereof. In contemplation of law during the time when persons

The confusion caused by the giving of such instructions is demonstrated by the jury's award of compensatory damages in *exactly the same amount*[3] against *all* of the 16 defendants against whom verdicts were returned, even though, for example, defendant Brooks was not one of the defendants named or included in the second (letter) or third (poster) causes of action in the *Kramer* case nor was she named or included in the second cause of action in the *Dorney* case.

In other words, the jury held Brooks liable to the same extent as it did the defendants who were named in all three of the causes of action in both cases, even though plaintiffs did not charge her in their pleadings with being a participant in or being liable for all of the three libels alleged.

Another observation as to the Brooks verdict is that it strongly implies that the conspiracy instructions led the jury to believe that, if it concluded that a defendant was "guilty"[4] of only one of the three libels alleged, then the total amount of compensatory damages to be assessed against that defendant would nevertheless be the same as though he were found liable for all three libels.

▮ The trial court should have advised the jury that *each* of the three causes of action involved a *separate* writing or communication and that separate consideration must be given as to which defendants, if any, were liable under each cause of action. Instead, the jury was generally instructed that it was to determine "whether or not he [a defendant] willfully, intentionally and knowingly joined with any other or others in an agreement or understanding having the elements of a conspiracy."

▮ We have concluded that in the instant case it was error for the trial court to instruct the jury in effect that, if it found that there was a general conspiracy by defendants to libel plaintiffs, a defendant who was a "conspirator" as to one of the libels charged would thereby become liable in damages for the other two libels. This would amount to the im-

---

are co-conspirators, the act of one in pursuance of the common design is the act of all, and each is legally responsible for any act of a confederate that follows incidentally in the execution of the common design as one of its probable and natural consequences, even though it was not intended as a part of the original plan, and even though he was not present at the time of the commission of such act.''

[3]Each of the two verdicts awarded to the plaintiff therein ''compensatory damages in the sum of $1,600.00,'' to which was added the words, ''at the rate of $100.00 per remaining 16 defendants.''

[4]As to defendants Oldemeyer and Patton, the jury returned verdicts of ''Not Guilty.''

position of a liability which is not within the issues framed by the pleadings.

For the reasons stated above, the judgments appealed from (1 Civil Nos. 20961 and 20963) are reversed.

Plaintiffs have appealed (1 Civil Nos. 20962 and 20964) from orders allowing costs to defendants Oldemeyer and Patton, who obtained judgments against plaintiffs.

The allowance of such costs is provided for by subdivision (b) of section 1032 of the Code of Civil Procedure. Subdivision (a) thereof lists an action for the recovery of damages as one of those in which plaintiff is allowed costs upon a judgment in his favor. The first sentence of subdivision (b) makes the same provision as to a prevailing defendant in such an action.

Our attention is called to the wording of the second sentence of subdivision (b), which is as follows: "When there are several defendants in any action mentioned in subdivision (a) of this section, *not united in interest*, and making separate defenses by separate answers, and plaintiff fails to recover judgment against all, the court *must* award costs to such of the defendants as have judgment in their favor." (Italics added.) Thus, the allowance of costs to defendants in the category specified is made mandatory.

Plaintiffs suggest that the foregoing wording *implies* that where, as here, several defendants *are* united in interest and join in making the same defenses in the same answer, those defendants who prevail cannot recover any costs at all if the other defendants do not also prevail. No authority is cited as so holding and we know of none.

In our opinion the second sentence in section 1032, subdivision (b), is limited in its application to the specific situation therein described and should not be given an interpretation by implication which would *preclude* the trial court from allowing costs to the prevailing defendants herein.

Plaintiffs call our attention to *Naify* v. *Pacific Indemnity Co.*, 11 Cal.2d 5 [76 P.2d 663, 115 A.L.R. 476]. The decision therein states that "there are sound reasons for recovery against each of the [three] defendants" but agrees with the argument that "the judgment, as rendered, is inconsistent, in that it declares the insurance company liable on the policy, yet holds the other [two] defendants liable for failure to keep the plaintiff insured." (P. 9.)

The Supreme Court therefore reversed the judgment as to the car dealer and the finance company but denied them any

costs on appeal. We have examined the briefs on appeal and the matter of costs was not made an issue or discussed therein. The opinion makes no reference to section 1032 of the Code of Civil Procedure or any other cost statute or rule. As stated in *Hedlund* v. *Sutter Medical Service Co.*, 51 Cal.App.2d 327 [124 P.2d 878], the *Naify* case ''dealt with the question of costs on appeal, not trial costs, and did not purport to construe the effect of the code section above quoted [§ 1032].''

The *Naify* case at best only supports the proposition that, under certain circumstances, an appellate court may in its discretion allow or deny costs on appeal to an appellant even though it reverses the judgment as against him.

Even though this proposition were held to be applicable to costs allowable in the lower court under the provisions of section 1032, there would still be the obvious distinction in the instant case that such costs were allowed, not denied.

Plaintiffs next contend that ''If this court should determine that it is within the trial court's discretion to award costs to the two prevailing defendants, plaintiffs then urge that the court abused its discretion in awarding the entire costs incurred by all eighteen defendants to the two defendants who prevailed . . . .''

The items in the cost bills under attack are for reporter's fees at trial, witness fees, sheriff's fees for serving subpoenas and depositions. Both cost bills had attached to them a declaration under penalty of perjury that defendants Oldemeyer and Patton had necessarily incurred these costs and such declarations were *uncontroverted*.

The applicable rule is as follows: ''The allowance or disallowance of items for expenses incurred in the trial must ordinarily be left to the discretion of the trial judge. Thus, where there is no showing of abuse of discretion, an award to the successful defendant of cost items which also benefited the losing codefendants is not improper. The affidavit that the items were necessarily incurred by the successful defendant, unless controverted, is controlling.'' (Civil Procedure During Trial (Cont. Ed. Bar) p. 630.)

In *Barnhart* v. *Kron*, 88 Cal. 447, 450 [26 P. 210], it is stated: ''The fact that the items for the fees of the sheriff, the clerk, and the reporter were for services performed for both defendants [one of whom prevailed and one of whom did not], and not 'for services performed for Oscar Kron alone,' would not authorize the court to strike these items from the cost bill. The respondent may have himself paid

all of these items, and if so, they were expenses necessarily incurred by him in his defense.''

We have concluded that the trial court did not abuse its discretion in denying plaintiffs' motion to strike the cost bills of Oldemeyer and Patton or reduce them to two-eighteenths of the respective amounts thereof. The orders allowing costs are therefore affirmed.

Shoemaker, P. J., and Taylor, J., concurred.

The petitions of plaintiffs Kramer and Dorney in all four cases and of appellant Craige in Civ. Nos. 20961 and 20963 for a hearing by the Supreme Court were denied December 17, 1964.