S93A1311, S93A1341. COLLINS et al. v. MORRIS et al.
(two cases).
(438 SE2d 896)

CARLEY, Justice.

Appellants are the elected members of the Aragon City Council against whom, in October of 1992, appellees filed an application for a recall petition. Pursuant to OCGA § 21-4-6 (a), appellants sought judicial review of appellees' application and, after conducting a hearing in accordance with OCGA § 21-4-6 (f), the superior court found the recall petition to be legally insufficient. Appellees did not seek an appeal from this ruling. Instead, in February of 1993, appellees filed a revised application for a recall petition against appellants. Appellants

again sought judicial review and the superior court found appellees' revised recall application to be legally sufficient. In Case No. S93A1311, appellants appeal from that ruling.

Subsequent to the ruling appealed in Case No. S93A1311, appellants brought a separate declaratory judgment action attacking the constitutionality of the Recall Act, OCGA § 21-4-1 et seq. The superior court upheld the constitutionality of the Act and, in Case No. S93A1341, appellants appeal from that ruling.

The identical enumerations of error have been filed in both cases. Accordingly, the two appeals have been consolidated for disposition in this single opinion.

1. OCGA § 21-4-6 (f) provides that judicial review of an application for a recall petition

> shall be limited solely to a review of the legal sufficiency of the recall ground or grounds and the legal sufficiency of the alleged fact or facts upon which such ground or grounds are based as set forth in such recall application; and the review of such alleged fact or facts shall be only for the determination of the legal sufficiency of such alleged fact or facts as to form and not as to truth and shall not include discovery or evidentiary hearings.

According to appellants' enumeration of error, this provision of the Recall Act is unconstitutional, because the statutorily prescribed judicial

> review of the "legal sufficiency" of a recall application impermissibly fails to satisfy minimum due process requirements by denying an elected official any meaningful opportunity for a hearing even when the evidence would demonstrate that the alleged factual grounds for recall are completely fabricated.

> We recognize that "[a]n elected city official who is entitled to hold office under state law has a property interest in his office which can be taken from him only by procedures meeting the requirements of due process." [Cit.]

*City of Ludowici v. Stapleton,* 258 Ga. 868, 869 (1) (375 SE2d 855) (1989). " 'But it is also true that an official takes his office subject to the conditions imposed by the terms and nature of the political system in which he operates.' [Cit.]" *Eaves v. Harris,* 258 Ga. 1, 3 (2) (a) (364 SE2d 854) (1988).

Recall is a procedure whereby it is the voters themselves who make the ultimate determination as to whether an official should re-

tain his office for the duration of the term to which he was elected. Compare *City of Ludowici v. Stapleton,* supra (impeachment of mayor by aldermen); *Eaves v. Harris,* supra (suspension of county commissioner by governor); *Coleman v. Glenn,* 103 Ga. 458 (30 SE 297) (1898) (removal of members of county board of education by superior court upon recommendation of grand jury). The electorate's right of recall derives from our constitution. Ga. Const. of 1983, Art. II, Sec. II, Par. IV. "The people's right to seek recall of its public officers is a substantial right. . . ." *Howell v. Tidwell,* 258 Ga. 246, 247 (1) (368 SE2d 311) (1988). Accordingly, appellants took office subject to the condition that they could be recalled by the electorate.

Appellants urge, however, that the recall "condition" provided in OCGA § 21-4-6 (f) is unconstitutional because it denies an elected official an opportunity for a judicial hearing to determine the truth or falsity of the alleged facts upon which the recall application is based. Our constitution authorizes the General Assembly to provide for the "procedures, grounds, and all other matters relative to . . . recall. . . ." It does not, however, authorize the General Assembly, in doing so, to deny an elected official due process. Nevertheless,

> the amount of due process required depends upon the circumstances at hand: " ' "(d)ue process," unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances.' [Cit.] '(D)ue process is flexible and calls for such procedural protections as the particular situation demands.' (Cit.)"

*Eaves v. Harris,* supra at 4 (2) (b).

Through enactment of OCGA § 21-4-6 (f), the General Assembly has provided that an elected official is entitled to judicial review of the recall *application* to determine whether a statutorily specified ground for recall has been indeed stated and whether the supporting allegations of fact, if true, would authorize a finding that the statutorily specified ground for recall exists.

> If one or more of the statutory grounds for recall set forth in OCGA § 21-4-3 (7) (B) are alleged in the recall application, then the ground or grounds for recall are legally sufficient. To determine if the "fact or facts upon which such ground or grounds are based" are legally sufficient, a [superior] court should consider the following: 1) assuming the fact or facts to be true, [whether] they allege misconduct which constitutes a legally sufficient ground for recall according to the statutory definition of that term; 2) if so, [whether] the fact or facts are stated with "reasonable particularity[.]" [Cit.]

(Emphasis omitted.) *Brooks v. Branch*, 262 Ga. 658, 659-660 (2) (424 SE2d 277) (1993). Thus, the statute does provide for judicial review of the legal sufficiency of the recall application.

Once the recall *application* has been judicially determined to be legally sufficient as to both the stated ground and the alleged factual support, the recall *petition* can then circulate and, if a sufficient number of qualified voters sign the petition, a recall *election* will be held in accordance with OCGA § 21-4-13. Since recall is a concept which is predicated upon the power of the electorate to remove its elected officials, a statute which provides that the electorate, rather than the judiciary, shall determine the ultimate truth or falsity of the allegations of misconduct is certainly consistent with that concept.

"The fundamental idea of due process is notice and an opportunity to be heard. [Cit.] Due process [does not guarantee] a particular form or method of state procedure. [Cit.]" *Nix v. Long Mtn. Resources*, 262 Ga. 506, 509 (3) (422 SE2d 195) (1992). Since "due process" is a flexible concept which calls for such procedural protection as the " ' "particular situation demands[,]" ' " (*Eaves v. Harris*, supra at 4 (2) (b)), a statute limiting the role of the judiciary in the "particular situation" of the recall of public officers to that of making merely an initial determination as to the legal sufficiency of the recall application and, if it is sufficient, allowing the electorate ultimately to decide if the officer will or will not be recalled is not unconstitutional. "We conclude, in sum, that the [recall] statute affords adequate due process protection to the public official. . . ." *Eaves v. Harris*, supra at 4-5 (2) (b).

2. OCGA § 21-4-14 (a) provides limitations as to the filing of additional *petitions* for recall after a recall election has been held. OCGA § 21-4-14 (b) prohibits the filing of another *application* within six months after a recall *petition* has been found to be insufficient. However, there is no statutory provision proscribing the filing of an additional application subsequent to a judicial determination that a prior application was legally insufficient. The superior court found that its determination of the legal insufficiency of the original application for a recall petition filed by appellees in October of 1992 would not be a bar to the revised application filed by appellees in February of 1993. Appellants enumerate this ruling as error, urging that res judicata is a viable defense to appellees' revised application.

> "Under both [the doctrine of res judicata and that of estoppel by judgment], in order for the former decision to be conclusive, it must have been based, not merely on technical grounds, but at least in part on the merits where under the pleadings they were or could have been involved. [Cits.]" [Cits.]

*Powell v. Powell*, 200 Ga. 379, 383 (2) (37 SE2d 191) (1946). As discussed in Division 1, the statutory recall scheme enacted by the legislature does not permit the superior court to address the merits of the alleged grounds upon which the application for a recall petition is to be sought.

This statutory scheme is not such as would afford office holders a viable res judicata defense against submission of a revised application for a recall petition. Since judicial review is statutorily limited to a determination of the legal sufficiency of the form of the application for a recall petition, any previous judicial determination as to the legal insufficiency of the form of an application for a recall petition would not give rise to the assertion of a viable res judicata defense against submission of a subsequent revised application for a recall petition. See generally *Smith v. Davis*, 222 Ga. 839 (152 SE2d 870) (1967). A former adjudication merely as to form rather than on the merits does not operate as res judicata. *Goldstein v. Ga. R. &c. Co.*, 31 Ga. App. 688 (2) (121 SE 846) (1924). Res judicata does not attach to a judicial ruling which "points out a defect in form rather than a defect in substance. [Cit.]" *Westbrook v. Griffin*, 27 Ga. App. 290 (1) (108 SE 123) (1921). Under the statutory recall scheme enacted by the legislature, it is only the provisions of OCGA § 21-4-14, not the doctrine of res judicata, which operate as a constraint upon the initiation of a subsequent recall effort. It follows that the superior court correctly held that its mere determination of the legal insufficiency of the form of the application for a recall petition filed by appellees in October of 1992 would not be a bar to the revised application filed by appellees in February of 1993.

*Judgment affirmed. All the Justices concur, except Benham and Hunstein, JJ., who concur in part and dissent in part.*

BENHAM, Justice, concurring in part and dissenting in part.

I respectfully dissent from Division 1 of the majority opinion because I believe the Recall Act unconstitutionally deprives an elected official of the official's property right in the office without due process of law.

I concur fully in the majority's statements that an elected official has a property interest in the office that can be taken away only by procedures meeting the requirements of due process, that an elected official takes office subject to the possibility of being recalled by the electorate in the future, and that an elected official is statutorily entitled to judicial scrutiny only of the legal sufficiency of the recall application. See OCGA § 21-4-6 (f).[1] I also agree with the majority's im-

---

[1] In a previous version of the Recall Act, judicial review was not so limited. The 1990 amendment to the Act provided for an evidentiary hearing at which the chairperson of the

plicit assertion that due process does not entitle an elected official to a *judicial* hearing on the veracity of the allegations set forth in the recall application.[2] However, contrary to the majority's conclusion, the sum of these principles does not equal the adequate due process protection to which the public official is entitled.

The requirements of due process are satisfied if a citizen has reasonable notice and opportunity to be heard to present a claim or defense. *Hancock v. Bd. of Tax Assessors*, 226 Ga. 570 (176 SE2d 102) (1970); *Murphy v. Murphy*, 214 Ga. 602 (2) (106 SE2d 280) (1958); *City of Macon v. Benson*, 175 Ga. 502, 508 (166 SE 26) (1932). See also *Nix v. Long Mtn. Resources*, 262 Ga. 506 (3) (422 SE2d 195) (1992); *Keenan v. Hardison*, 245 Ga. 599 (2) (266 SE2d 205) (1980). The Georgia Recall Act provides an elected official with adequate *notice* of the transpiring events by requiring the election superintendent to notify the targeted elected official that an application for recall has been officially issued for circulation (OCGA § 21-4-5 (b) (2)); that a completed application for a recall petition has been filed with the election superintendent (OCGA § 21-4-5 (b) (3)); that a recall petition has been officially issued for circulation (OCGA § 21-4-5 (i)); and that the legal sufficiency or insufficiency of the recall petition has been certified (OCGA § 21-4-11 (e)). The official has notice of the allegations asserted against him since both the application for recall petition filed with the election superintendent and the recall petition circulated among the electorate contain "a brief statement of the fact or facts upon which the ground or grounds [of recall] are based," written by the recall proponents. OCGA §§ 21-4-5 (b) (D); 21-4-7 (c).

The grounds for recall are statutorily required to be repeatedly put before the electorate: the "brief statement" of the facts upon which the recall is based must be read by or to each signer of the recall petition. OCGA § 21-4-7 (c). Should the proceedings reach the point that a recall election is conducted, the ground or grounds for recall must be printed on the ballot. OCGA § 21-4-13 (e). Yet nowhere does the statute give the elected official an opportunity to be heard on the matter. Compare the recall election provisions in other states: Alaska (ASA § 15.45.680) and Kansas (KSA § 4329) (each gives the elected official subject to recall the right to present a 200-

---

recall proponents had the burden of
   demonstrating by a preponderance of the evidence that the ground or grounds upon which the application for a recall petition and the fact or facts upon which the ground or grounds are based, as set forth in the application for a recall petition, are legally sufficient.
Ga. L. 1990, p. 1939, § 6.

[2] As a result, I would affirm the trial court's refusal to allow the Aragon elected officials to present evidence challenging the truthfulness of the allegations of misconduct set forth by the recall proponents.

word statement justifying his conduct in office to the election director, who is required to provide copies of the 200-word statement of grounds for recall and the official's statement in justification to each election board, which is required to post the copies in three conspicuous places at each polling place); Arizona (ARSA § 19-207, 213); Idaho (Idaho Code § 34-1708); Michigan (MSA § 6.1966); Montana (MCA § 2-16-601 et seq.); Nevada (NRSA § 306.060(1)); Oregon (Oregon Constitution Art. II, Sec. 18); and Washington (RCWA § 29.82.105, 130) (each gives the elected official the right to submit a 200-word justification of his conduct which is printed on the recall election ballot (along with a 200-word statement of grounds for recall));[3] California (West's ACA Elections §§ 27023, 27316) (gives the elected official the right to file a 200-word answer to the grounds for recall, and both the grounds and the answer and a sample ballot are mailed to every registered voter); Washington, D.C. (D.C. Code § 1-1321 (d) (2), (e) (2)) and Florida (FSA § 100.361) (official entitled to give a 200-word response to the 200-word statement of grounds for recall, and both 200-word statements are printed on the recall petitions circulated to the electorate); Minnesota (MSA § 351.16 -.22) (elected official entitled to a public hearing presided over by a judge before a removal election may be held); Mississippi (MCA § 25-5-7 elected official entitled to a hearing before a three-judge panel to determine whether there is a substantial basis for a removal election).[4]

None of the above States which provide for recall elections requires a judicial determination of the truth of the allegations contained in the application for recall. But each State does extend to the beleaguered elected official an opportunity to be heard — the opportunity to present his side of the story to the electorate and justify the conduct which is serving as the basis for taking his office from him. Georgia's statute does not provide the means by which an official may be heard on the issue.

I recognize that we have adopted the U. S. Supreme Court's statement that "due process is flexible and calls for such procedural protections as the particular situation demands." *Matthews v. Eldridge*, 424 U. S. 319, 334-335 (96 SC 893, 47 LE2d 18) (1976), cited in *Eaves v. Harris*, 258 Ga. 1 (2) (b) (364 SE2d 854) (1988). In *Eaves*, we endorsed a flexible standard of due process after emphasizing that a suspension from office pursuant to OCGA § 45-5-6 entailed only a

---

[3] Nevada does not statutorily limit the length of the official's response, and Washington permits an elected official to respond in 250 words rather than 200.

[4] Several states employ procedures other than recall or removal election to take an office from the elected official. New York, New Hampshire, Oklahoma, Ohio, Pennsylvania, South Carolina, South Dakota, Tennessee, and West Virginia, for example, have statutes authorizing removal of the official.

temporary loss of official authority with no loss of pay, and had as its "triggering device" an indictment based upon a finding of probable cause that the elected official committed a crime. Due process cannot bend so far where the Recall Act is concerned, as recall has at stake the very permanent taking of an office with the concomitant permanent loss of pay, and is not the product of any official finding of probable cause.

It is the responsibility of the judiciary, under our system of "checks and balances," to ensure that the procedure of recall enacted by the General Assembly affords the elected official due process of law. See *City of Ludowici v. Stapleton*, 258 Ga. 868 (375 SE2d 855) (1989). After examining our statutory scheme, I find it sadly lacking a fundamental ingredient — due process of law. On that basis, I conclude that the statute is unconstitutional and that the judgment of the trial court finding it constitutional (Case No. S93A1341) should be reversed.

I am authorized to state that Justice Hunstein joins in this opinion.

DECIDED JANUARY 24, 1994.

*James R. Crawford, Michael D. McRae,* for appellants.

*Brinson, Askew, Berry, Seigler, Richardson & Davis, C. King Askew, Gammon & Anderson, Joseph N. Anderson,* for appellees.