## A97A0741. WILLIAMS v. STEPLER.
### (490 SE2d 167)

RUFFIN, Judge.

John Williams sued his ex-wife, Sharon Stepler, for intentional interference with his custody rights of their minor son, intentional infliction of emotional distress, defamation, and invasion of privacy by casting him in a false light. Williams appeals from the trial court's order granting summary judgment to Stepler. For reasons which follow, we affirm.

"To prevail at summary judgment under OCGA § 9-11-56, the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law. OCGA § 9-11-56 (c). A *defendant* may do this by showing the court that the documents, affidavits, depositions and other evidence in the record reveal that there is no evidence sufficient to create a jury issue on at least one essential element of plaintiff's case. . . . A defendant who will not bear the burden of proof at trial need not affirmatively disprove the nonmoving party's case; instead, the burden on the moving party may be discharged by pointing out by reference to the affidavits, depositions and other documents in the record that there is an absence of evidence to support the nonmoving party's case. If the moving party discharges this burden, the nonmoving party cannot rest on its pleadings, but rather must point to specific evidence giving rise to a triable issue. OCGA § 9-11-56 (e)." (Emphasis in original.) *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991).

The record in this case shows that when they divorced in 1990, Williams and Stepler entered into an agreement providing for joint custody of their six-year-old son. The agreement was incorporated into the final decree issued by the Superior Court of Gwinnett

County ("1990 decree"). On August 28, 1995, Stepler, an attorney, filed a petition, pro se, for relief under the Family Violence Act alleging that their son told her Williams "had put his hand inside [the son's] pants while they were watching T.V."

On September 25, 1995, after hearing evidence and arguments on Stepler's family violence petition, the superior court judge entered a written temporary protective order which contained findings of fact and conclusions of law. The order, which was prepared by Stepler, states in part: "The Court finds that [Williams] did . . . place his hand inside [the child's] shorts, touching [him] inappropriately. The Court further finds that this touching caused [the son] severe emotional distress." The order further provided that Williams' conduct constituted simple battery and cited as authority *Wells v. State*, 204 Ga. App. 90 (418 SE2d 450) (1992). The trial court accordingly awarded temporary physical custody to Stepler.

On October 12, 1995, Williams filed a complaint in the Superior Court of Gwinnett County requesting a change of custody. On that same date, Williams filed an Application for Discretionary Appeal of the superior court's September 25, 1995 temporary protective order. We granted Williams' application and, after review, reversed the trial court's grant of the protective order. *Williams v. Stepler*, 221 Ga. App. 338 (471 SE2d 284) (1996) (physical precedent only). On October 13, 1995, the superior court transferred Williams' change of custody action to the juvenile court. On November 2, 1995, Williams filed a superior court contempt action against Stepler, alleging in part that she wrongfully denied him physical custody of their son. Williams contended that his appeal of the protective order acted as an automatic supersedeas of the order and that the custody and visitation provisions of the 1990 decree controlled. Pursuant to OCGA §§ 15-1-9.1 and 15-11-6 (b), the superior court subsequently transferred to the juvenile court, with an order of designation, "for investigation and determination" those portions of the contempt action which called into question issues of "custody, visitation and child support."

Following a hearing, the juvenile court found that Williams' appeal was not an automatic supersedeas of the protective order and that Stepler's custody of the child pursuant to that order did not constitute contempt of the 1990 decree. Williams did not appeal the juvenile court's order, but filed this action against Stepler for intentional interference with his custody rights of their minor son.

1. We agree with the trial court that the juvenile court's order barred Williams' claim against Stepler for intentional interference of his custody rights.

OCGA § 9-12-40 provides that "[a] judgment of a court of competent jurisdiction shall be conclusive between the same parties and their privies as to all matters put in issue or which under the rules of

law might have been put in issue in the cause wherein the judgment was rendered until the judgment is reversed or set aside." Although OCGA § 9-12-40 embodies the doctrine of res judicata, the related doctrine of estoppel by judgment similarly establishes the conclusiveness of previously decided issues. See *Jim West Housemovers v. Cobb County*, 259 Ga. 314 (380 SE2d 251) (1989). "The doctrine of estoppel by judgment differs from the plea of res judicata, in that, while res judicata applies only as between the same parties and upon the same cause of action to matters which were actually in issue or which under the rules of law could have been put in issue, estoppel by judgment applies as between the same parties upon any cause of action to matters which were directly decided in the former suit." (Citations and punctuation omitted.) Id. "Finality is the goal and the essence of the doctrines of res judicata and estoppel by judgment. Both doctrines generally prevent an unsuccessful litigant from attempting to re-litigate issues previously litigated by a court of competent jurisdiction." Id.

In this case, the doctrine of estoppel by judgment prevents Williams from re-litigating the custody issue which was decided by the juvenile court in the contempt action. It is clear from the record that the instant case includes the same parties that were involved in the juvenile court contempt action. Furthermore, although this case concerns a cause of action for intentionally interfering with custody rights, the propriety of Stepler's custody of the parties' minor child was an issue directly decided adversely to Williams in the former contempt action. Finally, while the juvenile court would not otherwise have had jurisdiction to decide if Stepler was in contempt of the superior court's custody order (see *Gignilliat v. Gentry*, 217 Ga. App. 518, 519-520 (1) (457 SE2d 833) (1995)), the designation order gave the juvenile court judge "all of the powers and authority of a judge of the court in which he [was] presiding." OCGA § 15-1-9.1 (g). Accordingly, because the custody issue was previously decided by a court of competent jurisdiction, and Williams failed to appeal from that decision, he is barred from re-litigating the issue here and the trial court did not err in granting Stepler summary judgment on this claim. In so finding, we render no opinion on whether the juvenile court properly decided the issue, because be it "correct or otherwise, its judgment until reversed is regarded as binding in every other court." (Citations and punctuation omitted.) *Jim West Housemovers*, supra at 315.

2. We also find no merit in Williams' assertion that the trial court erred in granting Stepler summary judgment on his claim for intentional infliction of emotional distress. Here again Williams argues that evidence of Stepler's interference with his custody rights sufficiently supported this claim.

The conduct complained of in support of a claim for intentional infliction of emotional distress must be extreme and outrageous. *Yarbray v. Southern Bell Tel. &c. Co.*, 261 Ga. 703, 706 (2) (409 SE2d 835) (1991). " 'Generally, the case is one in which the recitation of the facts to *an average member of the community* would arouse his resentment against the actor, and leave him to exclaim "Outrageous!" ' " (Emphasis supplied.) Id. "Whether a claim rises to the requisite level of outrageousness and egregiousness to sustain a claim for intentional infliction of emotional distress is a question of law. [Cit.]" Id.

In this case, Stepler contended that she maintained custody of the minor son pursuant to the superior court's temporary protective order. Although we subsequently reversed the order because the trial judge did not allow his interview with the child to be recorded, no evidence indicates that Stepler knew the resulting order was invalid and would be vacated. See *Williams*, supra at 339-340. Moreover, as we ruled in Division 1, Williams is barred from claiming that Stepler interfered with his custody rights because that issue was already decided adversely to Williams by a court of competent jurisdiction. See *Jim West Housemovers*, supra. Finally, even if Williams' appeal of the protective order resulted in an automatic supersedeas of that order, we do not find that Stepler's continued custody under the otherwise facially valid order constituted outrageous conduct. Simply stated, the issues presented by the labyrinth of pleadings, motions, and appeals filed in the ongoing litigation between the parties have been far from clear. This certainly is true regarding the issues related to Stepler's custody of the child pursuant to the temporary protective order. Under these circumstances it is difficult to imagine how the recitation of the facts to *an average member of the community* would arouse his resentment against Stepler and leave him to exclaim "Outrageous!" *Yarbray*, supra.

We accordingly conclude that the trial court did not err in granting Stepler summary judgment on Williams' claim for intentional infliction of emotional distress. See *Fisher v. Toombs County Nursing Home*, 223 Ga. App. 842, 846 (3) (479 SE2d 180) (1996).

3. Finally, Williams asserts that the trial court erred in granting Stepler summary judgment on his defamation and false light claims, which were based on Stepler's preparation of the protective order in the family violence action. We disagree.

The record shows that, following the hearing, the trial court directed Stepler to draft the protective order. After preparing a draft order, Stepler sent a copy to Williams' attorney for comments and suggestions. When she received no response from Williams' attorney, Stepler sent the proposed order to the trial judge and a copy to Williams' attorney. The trial judge subsequently adopted the proposed

order verbatim.

Williams contends that the order defamed him because it contained a finding that he improperly touched his son and a citation to *Wells v. State*, supra, a simple battery case in which the defendant was convicted of pinching a woman's breast. Williams argues that because the trial judge did not specifically include these references in his oral order from the bench, Stepler's inclusion of them in her proposed written order gave rise to his tort claims against her. We disagree and find that the submitted order was absolutely privileged.

OCGA § 51-5-8 provides that "[a]ll charges, allegations, and averments contained in regular pleadings filed in a court of competent jurisdiction, which are pertinent and material to the relief sought, whether legally sufficient to obtain it or not, are privileged. However false and malicious such charges, allegations, and averments may be, they shall not be deemed libelous." "The privilege is intended 'for the promotion of the public welfare, the purpose being that members of the legislature, judges of courts, jurors, lawyers, and witnesses may speak their minds freely and exercise their respective functions without incurring the risk of a criminal prosecution or an action for the recovery of damages.' [Cit.]" *Stewart v. Walton*, 254 Ga. 81, 82 (2) (326 SE2d 738) (1985).

It is clear from a review of past decisions that, in light of the foregoing policy considerations, we have not strictly limited the privilege under OCGA § 51-5-8 to "pleadings" as they are defined under OCGA § 9-11-7 (a). Rather, the absolute privilege afforded by OCGA § 51-5-8 has been more broadly construed to cover a notice of lis pendens, an affidavit in support of an arrest warrant, and the words of a judge in the course of a judicial proceeding. *Alcovy Properties v. MTW Investment Co.*, 212 Ga. App. 102, 103 (1) (441 SE2d 288) (1994); *Watkins v. Laser/Print-Atlanta*, 183 Ga. App. 172, 173 (2) (358 SE2d 477) (1987); *Bell v. Anderson*, 194 Ga. App. 27 (389 SE2d 762) (1989). Indeed, we have generally described the coverage of the privilege to include "official court documents" and acts of "legal process." *Phillips v. MacDougald*, 219 Ga. App. 152, 155 (2) (c) (464 SE2d 390) (1995); *Rothstein v. L. F. Still & Co.*, 181 Ga. App. 113, 115 (2) (b) (351 SE2d 513) (1986).

We believe that a proposed order prepared by a party, in the course of a judicial proceeding, at the direction of the judge, is absolutely privileged as an official court document. Stepler was merely attempting to comply with the trial judge's directive in preparing the order, which incidentally dealt with an extremely sensitive subject matter that would likely offend any individual, however phrased. Allowing for the recovery of damages against an attorney in Stepler's position would certainly frustrate the exercise of this duty. Moreover, once the findings were adopted by the court, they became findings of

the court, which under existing precedent are afforded absolute privilege. See *Bell*, supra.

Accordingly, we conclude that the trial court did not err in granting Stepler summary judgment on Williams' claims for defamation and invasion of privacy.

*Judgment affirmed. Birdsong, P. J., and Eldridge, J., concur.*

DECIDED JULY 25, 1997 — 

John T. Williams, *pro se.*
*Sharon S. Stepler*, pro se.

