S97G1113. DAVIS et al. v. SHAVERS.
(495 SE2d 23)

CARLEY, Justice.

Appellants filed recall applications against certain officials of the City of Fort Oglethorpe, including Glenn Shavers. When those officials sought judicial review of the legal sufficiency of the applications, a trial court found them to be legally insufficient, and this Court affirmed. *Davis v. Shavers*, 263 Ga. 785 (439 SE2d 650) (1994). Shavers then brought suit for libel based upon statements made in the recall application against him. A jury returned verdicts against Appellants and the trial court entered judgment on those verdicts. The Court of Appeals held that allegations in a recall application against an elected official are only conditionally, and not absolutely, privileged. *Davis v. Shavers*, 225 Ga. App. 497, 498-500 (1) (484 SE2d 243) (1997). However, the Court of Appeals reversed the lower court's

judgment based upon errors in the jury charge. *Davis v. Shavers*, 225 Ga. App., supra at 500-502 (3). We granted certiorari to determine whether statements in a recall application are conditionally or absolutely privileged. Because we hold that such statements are not absolutely privileged, we affirm the judgment of the Court of Appeals.

As a general rule, statements regarding public figures are not absolutely privileged. Under OCGA § 51-5-7 (9) and *New York Times Co. v. Sullivan*, 376 U. S. 254 (84 SC 710, 11 LE2d 686) (1964), a public official or a candidate for public office may recover on his libel claim, so long as he demonstrates, by clear and convincing evidence, that the statements complained of were made with actual malice. *Gardner v. Boatright*, 216 Ga. App. 755 (455 SE2d 847) (1995); *Collins v. Cox Enterprises,* 215 Ga. App. 679 (452 SE2d 226) (1994); *Thibadeau v. Crane*, 131 Ga. App. 591, 593-594 (3) (206 SE2d 609) (1974).

Appellants contend that both public policy and OCGA § 51-5-8 require that statements in recall applications be absolutely privileged. Under OCGA § 51-5-8, "[a]ll charges, allegations, and averments contained in regular pleadings filed in a court of competent jurisdiction, which are pertinent and material to the relief sought," are absolutely privileged. The Court of Appeals has stated that the privilege established by OCGA § 51-5-8 generally includes " 'official court documents' and acts of 'legal process.' [Cits.]" *Williams v. Stepler*, 227 Ga. App. 591, 595 (3) (490 SE2d 167) (1997). However, the Recall Act provides for only limited judicial review of the legal sufficiency of the recall application, and prohibits discovery or evidentiary hearings and any determination of the truth of the statements in the application. OCGA § 21-4-6 (f). The reason for these strict limitations is "that the electorate, rather than the judiciary, . . . determine[s] the ultimate truth or falsity of the allegations of misconduct. . . ." *Collins v. Morris*, 263 Ga. 734, 737 (1) (438 SE2d 896) (1994). Thus, the recall procedure is not a "judicial" or even "official" procedure, but is political in nature, and the issue to be determined is of a political character. *Gunsul v. Ray*, 45 P2d 248, 249 (Cal. App. 1935). Furthermore, public policy does not support an interpretation of OCGA § 51-5-8 which leaves public officials with no remedy for allegedly libelous statements made with actual malice in the context of a procedure having only the slightest hint of a judicial nature. To the contrary, it is the policy of this state to restrict the rule of absolute privilege in the law of libel to "narrow and well-defined limits." *Fedderwitz v. Lamb*, 195 Ga. 691, 697 (25 SE2d 414) (1943). Accordingly, while we recognize the importance that criticism of the conduct of public officials plays in the administration of their offices, we conclude that, consistent with *New York Times Co. v. Sullivan*, supra, Appellants are entitled to the protection of a conditional privi-

lege only. *Kramer v. Ferguson*, 41 Cal. Rptr. 61, 64 (Cal. App. 1964). See also *Gunsul v. Ray*, supra. Therefore, the Court of Appeals correctly resolved this issue.

*Judgment affirmed. All the Justices concur, except Fletcher, P. J., who dissents.*

FLETCHER, Presiding Justice, dissenting.

By holding that voters who file a recall application have only a conditional privilege, the majority has unnecessarily eroded the right of recall. Few individuals will sign a recall petition, much less lead a recall effort, when they may face the possibility of a libel action for their participation. Because the court's opinion will have a chilling effect on political speech and the recall statute already provides sufficient safeguards to protect elected officials from false allegations, I dissent.

1. The Recall Act of 1989 outlines the procedure for seeking recall of public officials.[1] To initiate the process, electors who are registered voters in the official's district file an application for a recall petition with the election superintendent.[2] The application must include a statement of the grounds for recall, a brief statement of the facts on which the grounds are based, and an affidavit by the chairperson and circulator that each person signing the application is an elector and the facts alleged are true.[3] If the election superintendent determines that the application is legally sufficient and the signers are qualified electors, the official certifies the application, issues official recall petition forms, and notifies the targeted public officer that a recall petition has been officially issued for circulation.[4]

The public officer may then challenge the application by seeking judicial review in superior court.[5] The court reviews both the grounds for recall and their factual basis to determine whether they are legally sufficient.[6] First, the grounds for recall must correspond to the reasons set forth in the statute and may not include discretionary acts.[7] Second, the factual allegations must be stated with reasonable

---

[1] See OCGA §§ 21-4-1 to 21-4-21.

[2] OCGA § 21-4-5.

[3] OCGA § 21-4-5 (b).

[4] OCGA § 21-4-5 (f)-(i).

[5] OCGA § 21-4-6 (a).

[6] OCGA § 21-4-6 (f); see *Collins v. Morris*, 263 Ga. 734, 736 (438 SE2d 896) (1994).

[7] See *Brooks v. Branch*, 262 Ga. 658, 660 (424 SE2d 277) (1993). "Grounds for recall" means:

    (A) That the official has, while holding public office, conducted himself or herself in a manner which relates to and adversely affects the administration of his or her office and adversely affects the rights and interests of the public; and

    (B) That the official:

      (i) Has committed an act or acts of malfeasance while in office;

particularity and be more than mere conclusions.[8] Third, the allegations must specify conduct that would constitute a statutory ground for recall.[9] "[I]t is imperative that the application state with clarity and specificity the facts supporting the grounds for recall such that both the public and the official sought to be recalled are properly notified of the violation alleged to have been committed."[10]

Although the superior court does not hold an evidentiary hearing or determine the truth of the factual allegations, its review is often decisive.[11] In the recall effort that led to this libel action, for example, the application alleged that city council member A. Glenn Shavers violated the Code of Ethics for Government Service in amending the retirement system ordinance by resolution rather than by ordinance and in voting an advance salary to another council member. Despite the specificity of these allegations, we affirmed the trial court's findings that the recall applications were legally insufficient, concluding that they failed to notify the public why the facts alleged might constitute an act of malfeasance or misconduct in office.[12]

Thus, the superior court plays a critical role in reviewing the application to prevent recall petitions based on bare allegations or notice pleading. In the language of civil procedure, the superior court treats the public official's challenge as a motion to dismiss and, assuming the facts alleged are true, determines whether they are sufficient as a matter of law to state a ground for recall. It is only after the superior court rules that the application is legally sufficient that the sponsors may circulate the recall petition.[13] This judicial review distinguishes this state's procedure from the procedure in other states where appellate courts have found only a conditional or

---

(ii) Has violated his or her oath of office;
(iii) Has committed an act of misconduct in office;
(iv) Is guilty of a failure to perform duties prescribed in law; or
(v) Has willfully misused, converted, or misappropriated, without authority, public property or public funds entrusted to or associated with the elective office to which the official has been elected or appointed.
OCGA § 21-4-3 (7).

[8] *Hamlett v. Hubbard*, 262 Ga. 279, 279-280 (416 SE2d 732) (1992).

[9] *Brooks v. Branch*, 262 Ga. at 660.

[10] *Davis v. Shavers*, 263 Ga. 785, 786 (439 SE2d 650) (1994).

[11] See *Brooks v. Branch*, 262 Ga. at 660 (affirming superior court decision that applications were legally insufficient because facts alleged were mere conclusions or failed to allege conduct that would constitute a ground for recall); *Hamlett v. Hubbard*, 262 Ga. at 281-282 (agreeing with trial court that four of five alleged facts were legally insufficient but reversing finding that fifth allegation was insufficient); *Steele v. Honea*, 261 Ga. 644, 646 (409 SE2d 652) (1991) (affirming trial court's finding that recall application was legally insufficient); *Howell v. Tidwell*, 258 Ga. 246 (368 SE2d 311) (1988) (affirming trial court's grant of summary judgment to public officials based on multiple signatures of common authorship and the resultant false affidavit).

[12] *Davis v. Shavers*, 263 Ga. at 786-787.

[13] OCGA § 21-4-6 (g).

qualified privilege for electors who sign a recall petition.[14]

2. Since the underlying principle for a privilege is public policy,[15] the decision to grant an absolute or conditional privilege requires a balancing of the competing interests. Weighing in favor of the privilege in this case is society's interest in a free and full discussion of the performance of public officials in their office; opposing the grant of a privilege is the interest of public officials in their personal and professional reputation. Since recall is constitutionally based in Georgia, public policy favors providing a meaningful process.[16]

Both the United States and Georgia Constitutions guarantee free speech.[17] A citizen's right to criticize public officials for their conduct in office is an essential element of this constitutional right.

> Those who won our independence believed . . . that public discussion is a political duty; and that this should be a fundamental principle of the American government. They recognized the risks to which all human institutions are subject. But they knew that order cannot be secured merely through fear of punishment for its infraction; that it is hazardous to discourage thought, hope and imagination; that fear breeds repression; that repression breeds hate; that hate menaces stable government; that the path of safety lies in the opportunity to discuss freely supposed grievances and proposed remedies; and that the fitting remedy for evil counsels is good ones. . . . Recognizing the occasional tyrannies of governing majorities, they amended the Constitution so that free speech and assembly should be guaranteed.[18]

Permitting libel actions against individuals involved in the recall process will have a chilling effect on the exercise of this constitutional right to free speech. " 'Whatever is added to the field of libel is taken from the field of free debate.' "[19] Although the majority opinion acknowledges the importance of public criticism of elected officials, it undermines this recognition by granting only a conditional privilege to the statements in a recall application. "The requirement that mal-

---

[14] See, e.g., *Concerned Members of Intermountain Rural Elec. Ass'n v. District Court*, 713 P2d 923 (Colo. 1986); *Gunsul v. Ray*, 45 P2d 248 (Cal. App. 1935); *State v. Wilson*, 241 P 970 (Wash. 1925).

[15] See *Fedderwitz v. Lamb*, 195 Ga. 691, 696 (25 SE2d 414) (1943).

[16] See Ga. Const., Art. II, Sec. II, Para. IV.

[17] U. S. Const. amend. I; Ga. Const. Art. I, Sec. I, Para. V.

[18] *Whitney v. California*, 274 U. S. 357, 375-376 (47 SC 641, 71 LE 1095) (1927) (Brandeis, J., concurring).

[19] *New York Times Co. v. Sullivan*, 376 U. S. 254, 272 (84 SC 710, 11 LE2d 686) (1964) (quoting *Sweeney v. Patterson*, 128 F2d 457, 458 (D.C. Cir.), cert. denied, 317 U. S. 678 (1942)).

ice be proved provides at best an evanescent protection for the right critically to discuss public affairs and certainly does not measure up to the sturdy safeguard embodied in the First Amendment."[20] As we have said previously, "if critics of government, be they citizens or press, speak only at the risk of being prosecuted for libel or slander, few will criticize government at all."[21] The need for free and open debate concerning the performance of elected officials justifies granting absolute immunity to persons who seek the recall of a public official for misconduct in office.

Moreover, the ability to file a defamation action is not necessary to protect the public official from false facts alleged in a recall application in this state. Unlike many states, the Georgia General Assembly has already provided for the punishment of persons who make false allegations. The recall statute requires both the petition chairperson and application circulator to sign an affidavit stating that the facts on which the grounds of recall are based are true.[22] A person who signs a false affidavit may be prosecuted for false swearing, a crime punishable by a fine up to $1,000 and a term of imprisonment of one to five years.[23] In addition, any person who gives or receives money for signing a recall application, induces or compels another person to sign a recall application, signs another person's name to the application, or signs his or her name more than once to the application is guilty of a misdemeanor.[24] Thus, the legislature has prescribed punishments that should deter false allegations.[25]

3. OCGA § 51-5-8 provides absolute immunity for allegations in court pleadings:

> All charges, allegations, and averments contained in regular pleadings filed in a court of competent jurisdiction, which are pertinent and material to the relief sought, whether legally sufficient to obtain it or not, are privileged. However false and malicious such charges, allegations, and averments may be, they shall not be deemed libelous.

The appellate decisions in this state have not limited this absolute

---

[20] *New York Times Co. v. Sullivan*, 376 U. S. 254, 293 (Black, J., concurring).

[21] *Cox Enterprises v. Carroll City/County Hospital Auth.*, 247 Ga. 39, 41 (273 SE2d 841) (1981).

[22] OCGA § 21-4-5 (b) (1) (E) (i).

[23] OCGA § 21-4-5 (b) (1) (E) (ii).

[24] OCGA § 21-4-20.

[25] See generally Piper M. Willhite, Defamation Law: Privileges from Liability: Distinguishing Quasi-judicial Proceedings from Proceedings Which Are Preliminary to Judicial Hearings, 47 Okla. L. Rev. 541, 552-556, 569 (1994) (proposing an absolute privilege in quasi-judicial proceedings when communication is made under oath because "oath provides a safeguard from potentially false and defamatory statements").

privilege to formal court pleadings, but rather have extended it to allegations in official documents in judicial and quasi-judicial proceedings.[26] Thus, the privilege has been applied to protect allegations in affidavits, protective orders prepared by counsel, and filings with the state employment agency.[27]

Like the parties in other judicial and quasi-judicial proceedings, the individuals who lead recall efforts are entitled to absolute immunity for factual allegations made under oath in recall applications that are challenged in superior court. The recall process is not merely a political procedure, as the majority opinion characterizes it. In its initial stages, the recall process is dominated by judicial review. Before leaders of recall efforts may even circulate recall petitions, a court must rule on the legal sufficiency of their application. Thus, while the voters ultimately determine the truth or falsity of the allegations set out in the application, their ability to make that decision is controlled by the courts. As a result, the recall procedure is both political and judicial in nature: voters recall elected officials subject to close judicial scrutiny.[28] Given that the courts are involved at the beginning of the recall process, the allegations in the recall applications are made under oath, and the applications are subject to substantive judicial review, the persons who prepare and sign the applications are entitled to absolute immunity under OCGA § 51-5-8.

DECIDED JANUARY 26, 1998 —
RECONSIDERATION DENIED FEBRUARY 23, 1998.

*Waycaster, Morris, Johnson & Dean, R. Leslie Waycaster, Jr., Jeffrey J. Dean,* for appellants.
*Wiggins Law Firm, John O. Wiggins,* for appellee.
*Alston & Bird, Judson Graves, Daniel A. Kent, Amy R. Wolverton, Hollie G. Manheimer, Gerald R. Weber, Jr.,* amici curiae.

---

[26] See *Williams v. Stepler,* 227 Ga. App. 591 (490 SE2d 167) (1997); *Rivers v. Goodson,* 188 Ga. App. 661 ((373 SE2d 843) (1988) (testimony at FCC hearing presided over by an administrative law judge).

[27] See *Conley v. Key,* 98 Ga. 115, 117 (25 SE 914) (1896) (affidavits made in a judicial proceeding); *Watkins v. Laser/Print-Atlanta,* 183 Ga. App. 172 (358 SE2d 477) (1987) (affidavit in support of arrest warrant); *Williams v. Stepler,* 227 Ga. App. at 595 (protective order prepared for judge by attorney in child custody action); *Land v. Delta Airlines,* 147 Ga. App. 738 (250 SE2d 188) (1978) (employer's statements to and from Employment Security Agency of Georgia Department of Labor).

[28] See Elizabeth E. Mack, The Use and Abuse of Recall: A Proposal for Legislative Recall Reform, 67 Neb. L. Rev. 617, 632, 634-637 (1988).