(No. 81077.—

EAST ST. LOUIS FEDERATION OF TEACHERS, LOCAL 1220, AMERICAN FEDERATION OF TEACHERS, AFL-CIO, Appellee, v. EAST ST. LOUIS SCHOOL DISTRICT No. 189 FINANCIAL OVERSIGHT PANEL, Appellant.

*Opinion filed October 17, 1997.*

400

MILLER, J., concurring in part and dissenting in part.

James E. Ryan, Attorney General, of Springfield (Barbara A. Preiner, Solicitor General, and Rita M. Novak, Assistant Attorney General, of Chicago, of counsel), for appellant.

Pearson C.J. Bush, of East St. Louis (Robert L. Merriwether, Jr., of counsel), for appellee.

Charles J. Kolker, of Belleville, for intervenor Geraldine Jenkins.

JUSTICE HEIPLE delivered the opinion of the court:

Dr. Geraldine Jenkins, superintendent of East St. Louis School District No. 189, and the District No. 189 board of education filed separate complaints for declaratory judgment and injunctive relief. The parties sought to enjoin the Financial Oversight Panel for District No. 189 from removing the members of the school board from office and sought a declaratory judgment that section 1B—20 of the School District Financial Oversight Panel and Emergency Financial Assistance Law (Emergency Financial Assistance Law) (105 ILCS 5/1B—1 *et seq.* (West 1994)) violated the due process and equal protection guarantees of the United States and Illinois Constitutions. The circuit court of St. Clair County held that section 1B—20 violated the right to vote and the due process and equal protection guarantees of the United States and Illinois Constitutions (U.S. Const.,

amends. V, XIV; Ill. Const. 1970, art. I, § 2, art. III, § 1), and that the actions taken by the Panel to remove the school board pursuant to section 1B—20 were void. For the reasons stated below, we reverse.

### BACKGROUND

In 1988 East St. Louis School District No. 189 (District No. 189) was certified by the State Board of Education as a district in financial difficulty under section 1A—8 of the Emergency Financial Assistance Law, which is part of the School Code (105 ILCS 5/1—1 *et seq.* (West 1994)). Upon certification that a school district is in financial difficulty, section 1A—8 of the School Code requires that district to submit a financial plan to the State Board of Education. 105 ILCS 5/1A—8 (West 1994). In October 1994, with the financial problems of District No. 189 persisting, the State Board of Education established a Financial Oversight Panel (Panel) pursuant to section 1B—4 of the Emergency Financial Assistance Law, which it may do upon a majority vote of a local school board. 105 ILCS 5/1B—4 (West 1994). The purpose of a Financial Oversight Panel is to provide assistance to and exercise financial control over a financially troubled school district. Sections 1B—6(i), 1B—14(b) and 1B—10 of the Emergency Financial Assistance Law authorize the Panel to approve or reject school board contracts as part of this control. 105 ILCS 5/1B—6(i), 1B—10, 1B—14 (West 1994).

The instant controversy arose over the contract of Dr. Geraldine Jenkins, who became superintendent of the school district in 1994. The renewal of Dr. Jenkins' contract was up for consideration in 1996, and on March 18, 1996, the board of education of School District No. 189 (the school board), a seven-member elected body, voted to renew her contract. At a meeting on March 20, the Panel reviewed Dr. Jenkins' contract, and subsequently issued a notice to the school board, stating that

"the [P]anel believes the current contract does not meet the needs of the District under the situation and needs of the District today." The Panel ordered the school board not to renew Dr. Jenkins' contract and directed the school board to work with the Panel to develop guidelines for the duties and qualifications of the superintendent to be set down in a new contract.

On March 28, the school board voted to refuse to follow the Panel's directive to inform Dr. Jenkins that her contract would not be renewed. Pursuant to section 1B—20 of the Emergency Financial Assistance Law, which authorizes the Panel to remove school board members from office for failure to follow a valid order of the Panel, on April 1 the Panel voted to remove the entire school board pursuant to section 1B—20. The Panel justified its decision by citing numerous instances where the school board refused to follow the Panel's directives, including the refusal to inform Dr. Jenkins that her contract would not be renewed. The Panel did not deliver written charges to the board members or conduct a hearing before dismissing the school board members, actions which are not required by the statute. The Panel forwarded notification of the school board members' removal to Jed Deets, the regional superintendent of schools, instructing him to fill the vacancies on the school board by May 1. At the time of these events, the terms of the seven school board members were due to expire in either November 1997 or November 1999.

The day after the Panel's vote to remove the school board, the school board filed a second amended complaint in an ongoing lawsuit against the Panel. Count I of the school board's second amended complaint requested a declaratory judgment that section 1B—20, by which the Panel purported to dismiss the school board, was unconstitutional in that it violated the due process

and equal protection clauses of the Illinois Constitution of 1970 and the United States Constitution. Count I further asserted that the Panel exceeded its authority when it terminated the renewal of Dr. Jenkins' contract. Count II of the school board's second amended complaint repeated the allegations of count I and sought a preliminary injunction against the Panel and the regional superintendent to prevent the removal of the school board. On April 19 the school board filed an additional motion for a preliminary injunction to prevent the dismissal of the school board. The court allowed a subsequent motion to add the individual school board members as third-party plaintiffs.

Dr. Jenkins was granted permission to intervene, and on April 19 Dr. Jenkins, in her capacity as superintendent of schools of District No. 189 and as a resident and qualified voter of District No. 189, filed a complaint for injunctive relief. Dr. Jenkins' complaint asserted that the Panel lacked the authority to approve her contract, and that the Panel's decision not to allow her contract to be renewed unconstitutionally interfered with her property interest in her job and her liberty interest in her reputation. Dr. Jenkins further contended that the Panel's action removing the elected members of the school board under section 1B—20 was unconstitutional in that it violated her right to vote. Dr. Jenkins sought an injunction to prohibit the Panel from replacing her and removing the school board. She also sought a declaratory judgment as to the constitutionality of section 1B—20.

On April 29, 1996, the circuit court issued a preliminary injunction enjoining any acts to replace the members of the school board. In a written order entered on May 7, 1996, the circuit court determined that section 1B—20 was unconstitutional on its face insofar as it violated substantive and procedural due process and

that it impinged upon the right to vote. The circuit court also found that section 1B—20 denied the voters of School District No. 189 equal protection of the laws.

We allowed this direct appeal pursuant to Supreme Court Rule 302(a) (134 Ill. 2d R. 302(a)). Appellants, the State of Illinois and the Illinois State Board of Education (the State), assert that section 1B—20 is constitutional. Appellees are Dr. Geraldine Jenkins, in her capacity as a voter and in her position as superintendent, and the school board of District No. 189, as an entity, in each member's individual capacity as a member of the school board, and in the members' capacities as voters. Appellees counter that section 1B—20 is unconstitutional on a number of grounds. They assert that section 1B—20: (1) infringes on the right to vote; (2) violates procedural due process; (3) violates equal protection; and (4) is an improper delegation of legislative authority. Dr. Jenkins alone contends that section 1B—20 is an improper delegation of judicial authority.[1] In its own separate argument, the school board asserts that section 1B—20 is unconstitutionally vague.

## ANALYSIS

### I. Statutory Claims

The State commences by asserting that the circuit

---

[1] In her brief before the court, Dr. Jenkins makes three arguments that the Panel's actions violated her constitutional rights. First, she asserts that the Panel violated her property right to public employment; second, she contends that the Panel damaged her liberty interest in her reputation; and third, she maintains that the Panel interfered with her right to contract. These claims, though asserted in her complaint, were not mentioned nor ruled on by the circuit court and do not pertain to the constitutionality of section 1B—20, which was the only matter decided in the circuit court's order. We have no jurisdiction to decide issues outside the scope of the circuit court's ruling. 134 Ill. 2d R. 302(a). Accordingly, we will not consider these arguments by Dr. Jenkins.

court improperly reached the constitutionality of section 1B—20 because it did not first resolve potentially dispositive issues of statutory construction that were also before the court. A court should avoid declaring legislation unconstitutional if the case does not require it (*People ex rel. Waller v. 1990 Ford Bronco*, 158 Ill. 2d 460, 464 (1994)), and the power to determine the constitutionality of a statute should only be exercised if such finding is essential to the disposition of a case (*Osborn v. Village of River Forest*, 21 Ill. 2d 246, 249 (1961)). We will therefore first consider the questions of statutory construction raised by the parties.

We initially consider whether the Panel acted within its statutory authority when it ordered the school board not to renew Dr. Jenkins' contract. When Dr. Jenkins' two-year contract came up for renewal in 1996, the school board opted to renew. The Panel reviewed the contract, and in a letter to the school board, it stated that it believed that "the current contract does not meet the needs of the District under the situation and needs of the District today." The Panel directed the school board not to renew Dr. Jenkins' contract. The Panel further instructed that prior to approval of any contract for the superintendent of schools, the Panel would "work with the [school board] in developing guidelines for a new contract and duties for the Superintendent as well as qualifications and expectations of [the] Superintendent. The Panel wants to review the entire position of Superintendent in light of the financial areas of the Oversight Panel's responsibility and the current needs of the District." The Panel's ongoing concern regarding Dr. Jenkins' qualifications is evidenced by the minutes of a Panel meeting on September 28, 1995, which contain statements where the Panel expressed concern that Dr. Jenkins did not have sufficient financial expertise to keep the district's budget balanced. The

Panel also noted when Dr. Jenkins' contract was due to expire and discussed various alternatives the school district had regarding leadership.

Under the School Code, the Panel does not have the authority to appoint the superintendent of schools; that power is reserved for the school board. 105 ILCS 5/10—23.8 (West 1994). The Panel does have the authority, however, to approve all contracts made by the school board. Section 1B—6(i) and section 1B—10 of the Emergency Financial Assistance Law authorize the Panel to approve or reject contracts and obligations made by the school board, while section 1B—14 outlines the procedure by which the school board may obtain the Panel's approval of its contracts. 105 ILCS 5/1B—6(i), 1B—10, 1B—14 (West 1994).

The Emergency Financial Assistance Law defines the scope of the Panel's authority as encompassing all powers necessary to meet its responsibilities and to carry out its purposes and the purposes of the Emergency Financial Assistance Law. The Panel's purpose is to "exercise financial control over the board of education, and *** to furnish [the school board with] financial assistance" (105 ILCS 5/1B—6 (West 1994)), while the purpose of the Emergency Financial Assistance Law is "to provide emergency State financial assistance to school districts and establish a secure financial basis for their continued existence [and] *** to establish procedure, provide powers and impose restrictions to assure the financial and educational integrity of the public schools" (105 ILCS 5/2(b) (West 1994)). The question, then, is whether in fulfilling its purposes the Panel is limited to a review of the strictly financial aspects of a contract, that is, salary, or whether the Panel has broader powers of contract oversight.

We find that the Panel acted within its authority under the Emergency Financial Assistance Law when it

directed the school board not to renew Dr. Jenkins' contract. The language of the Emergency Financial Assistance Law does not expressly limit the Panel's authority over contracts to mere dollar approval. Nor is it contrary to the purpose of the statute for the Panel to require certain financial expertise of the superintendent to insure the financial well-being of the school district. It is certainly as important to the fiscal health of a school district in financial trouble to have a superintendent who can manage a budget as it is to have a superintendent whose salary is within that budget. The Panel was thus within its authority in refusing to renew a contract that did not require sufficient financial expertise of the superintendent.

The school board also raises issues of statutory interpretation. It argues that the Panel acted outside the authority of the statute when it ordered the regional superintendent to remove the school board members, and that the regional superintendent lacks the power to carry out that order. Whether the school board's interpretation of the statute is accurate is immaterial, however, because an examination of the record belies the school board's contention that the regional superintendent removed the school board members in the instant case. It was the Panel itself that performed the task. The regional superintendent was merely notified of the Panel's action and was ordered to fill the vacancies as provided for under section 10—10 of the School Code. 105 ILCS 5/10—10 (West 1994).

The school board next contends that the Panel itself did not have the authority to remove the school board. In support of this assertion, the school board refers to section 1B—20(d), which provides that school board members who fail to follow a valid order of the Panel or commit the school board to an unauthorized obligation are subject to "appropriate administrative discipline,"

including removal from office. The school board argues that section 1B—20(d) is unclear as to what body is to administer the sanction. The State counters that section 1B—20 authorizes the Panel to impose "administrative discipline," and that discipline includes removal from office.

We agree with the State. Section 1B—20 in its entirety states:

"Sanctions. (a) No member, officer, employee, or agent of the board shall commit the board to any contract or other obligation or incur any liability on behalf of the board for any purpose if the amount of such contract, obligation or liability is in excess of the amount authorized for that purpose then available under the financial plan and budget then in effect.

(b) No member, officer, employee or agent of the board shall commit the board to any contract or other obligation on behalf of the board for the payment of money for any purpose required to be approved by the Financial Oversight Panel unless such contract or other obligation has been approved by the Panel.

(c) No member, officer, employee or agent of the board shall take any action in violation of any valid order of the Panel or shall fail or refuse to take any action required by any such order or shall prepare, present, or certify any information (including any projections or estimates) or report for the Panel or any of its agents that is false or misleading, or, upon learning that any such information is false or misleading, shall fail promptly to advise the Panel or its agents.

(d) In addition to any penalty or liability under any other law, any member, officer, employee or agent of the board who violates subsection (a), (b), or (c) of this Section shall be subject to appropriate administrative discipline, including, if warranted, suspension from duty without pay, removal from office, or termination of employment." 105 ILCS 5/1B—20 (West 1994).

The primary rule of statutory interpretation is to ascertain and give effect to the intent of the legislature, which should be construed primarily from the language

of the statute. *Bonaguro v. County Officers Electoral Board*, 158 Ill. 2d 391, 397 (1994). The statute shall be evaluated as a whole. *Bonaguro*, 158 Ill. 2d at 397. Although subsection (d) does not explicitly refer to the Panel as the disciplinary entity, an examination of the language of section 1B—20 as a whole renders this conclusion the only logical interpretation. Section 1B—20 discusses the consequences that will occur when a school board refuses to cooperate with a Financial Oversight Panel. Subsections (b) and (c) specifically mention the Panel. No other oversight party or entity is mentioned, and section 1B—20 does not refer to any other section of the statute where some other disciplinary entity is identified. No other section in the Financial Assistance Law suggests that the Panel does not have the power to remove the school board, and, moreover, the Panel is the logical body to carry out the discipline for failure to follow its own directives. Accordingly, we find that the legislature intended the Panel have the authority to remove the school board for failure to follow valid orders.

## II. Constitutional Claims

Turning to the constitutionality of section 1B—20, we observe at the outset that a statute challenged as unconstitutional enjoys a presumption of constitutionality. *Tully v. Edgar*, 171 Ill. 2d 297, 304 (1996). Parties who wish to challenge the constitutionality of a statute bear the burden of rebutting the presumption and establishing a constitutional violation. *People v. Blackorby*, 146 Ill. 2d 307, 318 (1992). Accordingly, a court will construe a statute as constitutional where it can do so reasonably. *Bonaguro*, 158 Ill. 2d at 397.

In addressing the appellees' constitutional claims, it is first important to clarify the capacity in which the appellees may assert them. A school board as an entity is a governmental agency, or "municipal corporation," cre-

ated by the legislature and subject to its will. *Cronin v. Lindberg*, 66 Ill. 2d 47, 55 (1976). Offices created by statute are wholly within the control of the legislature, "which may at pleasure create or abolish them, modify their duties, shorten or lengthen their terms, increase or diminish the salary or change the mode of compensation." *Hughes v. Traeger*, 264 Ill. 612, 616 (1914). The State's control over units of local government is without regard to due process guarantees. *Cronin*, 66 Ill. 2d at 56; *Meador v. City of Salem*, 51 Ill. 2d 572, 578 (1972); *People ex rel. Taylor v. Carmago School District*, 313 Ill. 321, 324 (1924). The school board as an entity, therefore, cannot assert due process claims against the state. Rather, only the school board members in their capacity as individuals and as voters can assert such a claim. We further observe that Dr. Jenkins has limited her due process claims to her position as a voter.

### A. Right to Vote

Appellees initially argue that section 1B—20 unconstitutionally infringes on the fundamental right to vote because it authorizes the summary removal of duly elected officials from office. They contend that section 1B—20 must therefore be subjected to strict scrutiny, which requires that a statute be narrowly tailored to a compelling state interest to pass constitutional muster. *Tully*, 171 Ill. 2d at 304-05. Section 1B—20 fails this test, appellees assert, and must be struck down. The State responds that the discipline provision in section 1B—20, including the possibility of dismissal, is narrowly tailored and necessary to achieve the State's goal of financially sound school districts.

We find it unnecessary to resort to the parties' "strict scrutiny" analytical framework. A school board is a municipal corporation, subject to the will of the legislature. *Cronin*, 66 Ill. 2d at 55. The legislature has the discretion to formulate the character, function, and

duties of school boards. *Carmago School District*, 313 Ill. at 324. As this court stated in *Carmago School District*, the powers of municipal corporations "may be enlarged, diminished, modified or revoked *** at the pleasure of the legislature." *Carmago School District*, 313 Ill. at 324. By choosing to define "school board member" as someone who could be removed from office for disobeying a valid order from a Financial Oversight Panel, the legislature was merely establishing the conditions and extent of a member's term of office. The legislature was free to do this if it so chose.

Appellees cite *Tully v. Edgar*, 171 Ill. 2d 297 (1996), to support their argument that section 1B—20 unconstitutionally infringes on the right to vote. *Tully* involved a public act that changed the selection process of the Board of Trustees of the University of Illinois from an elective to an appointive system. The act further provided that the then-serving, duly-elected members of the Board of Trustees would be supplanted midterm by appointed replacements. This court found that the act in question violated the electorate's right to vote, in that it nullified the voters' choice by eliminating, midterm, the right of the elected officials to serve out the balance of their terms. *Tully*, 171 Ill. 2d at 312.

Appellees assert that *Tully* controls the case at bar because section 1B—20 similarly allows the state to remove elected officials midterm. Appellees, however, fail to acknowledge a crucial distinction between *Tully* and the instant case. In *Tully*, the public act removing the trustees from office was enacted *after* the trustees were elected. When the voters elected the trustees, they were electing a candidate to serve for six years. The public act in *Tully* removed the trustee from office before the six-year terms had expired, and thus altered the effect of the electorate's vote in a constitutionally impermissible manner. In the case at bar, however, the

dismissal provisions of section 1B—20 became effective on December 5, 1989, *before* the current school board members were elected. Thus, when the instant voters elected the school board, a school board member by definition was one who could be removed from office for failure to obey a valid Panel order. As previously observed, the State was free to so define that office. Thus a legislative scheme that provides that a school board member can be removed from office for failure to follow the valid directive of a Financial Oversight Panel does not violate the fundamental right to vote.

## B. Procedural Due Process

### 1. School Board Members

Appellees next assert that section 1B—20 violates procedural due process. Procedural due process claims concern the constitutionality of the specific procedures employed to deny a person's life, liberty, or property interest. *People v. R.G.*, 131 Ill. 2d 328, 342 (1989); *Tiller v. Klincar*, 138 Ill. 2d 1, 13-14 (1990); *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 541, 84 L. Ed. 2d 494, 503, 105 S. Ct. 1487, 1493 (1985). Procedural due process rules are meant to protect persons not from the deprivation, but from the mistaken or unjustified deprivation of life, liberty, or property. *People v. Lang*, 113 Ill. 2d 407, 444 (1986); *Fuentes v. Shevin*, 407 U.S. 67, 81, 32 L. Ed. 2d 556, 570, 92 S. Ct. 1983, 1994 (1972). Courts considering procedural due process questions conduct a three-part analysis: the first asks the threshold question whether there exists a liberty or property interest which has been interfered with by the State; the second examines the risk of an erroneous deprivation of such an interest through the procedures already in place, while considering the value of additional safeguards; and the third addresses the effect the administrative and monetary burdens would have on the state's inter-

est. *Mathews v. Eldridge*, 424 U.S. 319, 335, 47 L. Ed. 2d 18, 33, 96 S. Ct. 893, 903 (1976); *R.G.*, 131 Ill. 2d at 354.

As a threshold matter, then, we consider whether a constitutionally protected liberty or property interest is at stake. *Tiller*, 138 Ill. 2d at 13. While earlier in this opinion we determined that the school board as an entity could not assert due process rights against the state, we did not consider whether the school board members as individuals could assert such a claim. We consider the question now. While the school board members as individuals have no property or liberty right to their offices secured by the federal due process clause, an elected official may have a property right in his office if such an interest is given to him under state law. *Snowden v. Hughes*, 321 U.S. 1, 7, 88 L. Ed. 497, 502, 64 S. Ct. 397, 400 (1944); *Brown v. Perkins*, 706 F. Supp. 633, 634 (N.D. Ill. 1989). An interest is a property right subject to due process protections if that interest is secured by rules or mutually explicit understandings that support the claim of entitlement. *Perry v. Sindermann*, 408 U.S. 593, 601, 33 L. Ed. 2d 570, 579, 92 S. Ct. 2694, 2699 (1972), citing *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577, 33 L. Ed. 2d 548, 561, 92 S. Ct. 2701, 2709 (1972). The question, then, is whether state law creates a property right in elected office. In our case, section 10—10 of the School Code provides that each member of the school board shall serve a term of four years. 105 ILCS 5/10—10 (West 1994). Other jurisdictions have recognized that such a statute gives the elected official a property interest in the office for the given length of time, and that the official must receive due process before being removed from office. *Crowe v. Lucas*, 595 F.2d 985, 993 (5th Cir. 1979) (statute that provided that aldermen were to remain in office for four years and until such time that their successors were duly elected and qualified created a property right in

that office); *Collins v. Morris*, 263 Ga. 734, 735, 438 S.E.2d 896, 897 (1994) (an elected official entitled to hold office under state law has a property right in that office); see also *Foley v. Kennedy*, 110 Nev. 1295, 1305, 885 P.2d 583, 589 (1994) (recognizing the property right to office held by an elected official); but see *State ex rel. Battin v. Bush*, 40 Ohio St. 3d 236, 242, 533 N.E.2d 301, 307 (1988) (elected officials have no property right in their offices); *Lanza v. Wagner*, 11 N.Y.2d 317, 324, 183 N.E.2d 670, 673, 229 N.Y.S.2d 380, 385 (1962) (elected officials have no property right in their offices).

In opposition to this proposition, the State cites two Illinois Supreme Court cases, *Donahue v. County of Will*, 100 Ill. 94 (1881), and *People ex rel. Malley v. Barrett*, 203 Ill. 99 (1903), both of which held that office holders have no property rights in their offices. In the nineteenth and early twentieth centuries, however, the term "property" had a narrower meaning than currently. *Patterson v. Portch*, 853 F.2d 1399, 1404 (7th Cir. 1988). The conception of a property right as embodied in procedural due process analysis, however, has evolved considerably over the latter half of this century and has extended into the area of public employment. See *Arnett v. Kennedy,* 416 U.S. 134, 40 L. Ed. 2d 15, 94 S. Ct. 1633 (1974); *Roth*, 408 U.S. 564, 33 L. Ed. 2d 548, 92 S. Ct. 2701; *Perry*, 408 U.S. 593, 33 L. Ed. 2d 570, 92 S. Ct. 2694. This court has likewise recognized that a public employee may have a property right in that employment, entitled to due process protection, depending upon the surrounding circumstances, including existing rules and understandings. *Powell v. Jones*, 56 Ill. 2d 70, 77 (1973).

Statutes providing that an elected officer shall serve for a certain number of years and shall be removed only upon certain events are akin to circumstances that create property rights in public employment, because they

give rise to an understanding or an expectation that that person will serve for the given length of time and will be removed for only the stated reasons. Like the public employee, an elected officer elected under substantially similar terms has a property right in his office and is to be afforded procedural due process protections. *Cf. Collins*, 263 Ga. at 735, 438 S.E.2d at 897 (an elected official entitled to hold office under state law has a property right in that office); *Crowe*, 595 F.2d 985 (state statute that provided that aldermen were to remain in office for four years and until such time that their successors were duly elected and qualified created a property right in that office). To the extent that the narrow understanding of property rights and procedural due process found in *Donahue* and *Barrett* are inconsistent with our modern understanding of these concepts, they are overruled. Accordingly, we hold that the school board members at issue had a property right in their offices.

We recognize, however, that the school board members' right to serve for four years is not absolute, for when the state creates a public office it may also create standards of conduct for that office. *Gruenburg v. Kavanagh*, 413 F. Supp. 1132, 1135 (E.D. Mich. 1976). For example, any elected official may be removed from office for official misconduct. 720 ILCS 5/33—3 (West 1994). In this case, the state has also required that school board members obey valid orders of a Panel. Therefore school board members have a property interest in their offices subject to these statutory conditions. While the legislature may require that a school board member follow a valid order of a Financial Oversight Panel, the legislature's authority to enact any statute is subject to the limits imposed in the constitution. *Tully*, 171 Ill. 2d at 308. Thus, before elected school board members may be deprived of their property interest in their offices for fail-

ure to follow a valid order of the Panel, they must be afforded due process. *Crowe*, 595 F.2d at 993.

Having determined that the due process clause applies, the question remains as to what process is due. *Loudermill*, 470 U.S. at 541, 84 L. Ed. 2d at 503, 105 S. Ct. at 1492. The first step in determining what process is due is to consider the risk of erroneous deprivation of one's property interest in office through the procedures already existing in the statute. *Mathews*, 424 U.S. at 335, 47 L. Ed. 2d at 33, 96 S. Ct. at 903. Our analysis is simplified because section 1B—20 contains no procedures. No provision is made to insure the validity of a Panel's actions; rather, it is left to the Panel's unfettered discretion to decide whether an order it issued is valid, whether a school board member has disobeyed that order, and whether removal from office is warranted. Furthermore, the Panel may make these conclusions and remove an elected school board member without even apprising anyone that such decisions are being made, as section 1B—20 has no notice requirement. Without warning, an entire elected body may be removed at the whim of the Panel. We find that, with no notice and no procedural requirements, the risk of erroneous deprivation of the school board member's property right to office is great.

With no procedure already in place, we must consider what procedure would be constitutionally adequate. While due process is flexible and calls for such procedural protections as the particular situation demands (*Cafeteria & Restaurant Workers Union, Local 473 v. McElroy*, 367 U.S. 886, 895, 6 L. Ed. 2d 1230, 1236, 81 S. Ct. 1743, 1748 (1961); *R.G.*, 131 Ill. 2d at 354), its fundamental requirement is the opportunity to be heard at a meaningful time and in a meaningful manner (*Mathews*, 424 U.S. at 333, 47 L. Ed. 2d at 32, 96 S. Ct. at 902). Indeed, before the individual may contest the

state action he must be made aware of it. Notice is a fundamental requirement of due process. *Stratton v. Wenona Community Unit District No. 1*, 133 Ill. 2d 413, 432 (1990). The notice must be reasonably calculated to apprise interested parties of the contemplated action and to afford the interested parties an opportunity to present their objections. *Stratton*, 133 Ill. 2d at 432. In the present case, therefore, the school board members must receive notice of the Panel's pending decision to remove them from office.

We also hold that the school board members are entitled to a pretermination hearing. Such a hearing would minimize the risk of unfair or mistaken deprivation of their protected rights by enabling them to contest the state's basis for depriving them of those rights. *Carey v. Piphus*, 435 U.S. 247, 259-60, 55 L. Ed. 2d 252, 262, 98 S. Ct. 1042, 1050 (1978); *Fuentes*, 407 U.S. at 81, 32 L. Ed. 2d at 570, 92 S. Ct. at 1994. The "root requirement" of due process is that an individual be given the opportunity to respond before he is deprived of a protected right. *Villegas v. Board of Fire & Police Commissioners*, 167 Ill. 2d 108, 119 (1995), citing *Loudermill*, 470 U.S. at 542, 84 L. Ed. 2d at 503-04, 105 S. Ct. at 1493. Holding a pretermination hearing, however brief, would insure that a school board member who had not violated the conditions attendant to his office would not be unjustifiably removed from office. The pretermination hearing need not be elaborate, rather, it need only give the school board members an opportunity to respond to the charges. The pretermination hearing's simplicity, however, should not mask its importance. Such a procedure is crucial to curb abuses of discretion and to insure that mistaken deprivations of protected rights do not occur.

Indeed, we find that some manner of process is required notwithstanding the state's interest in the mat-

ter, which is the final factor in our procedural due process analysis. Balanced against the school board member's right to procedural safeguards is the state's interest in maintaining financially sound school districts. The purpose of the Emergency Financial Assistance Law is to insure that Illinois school districts enjoy sound financial structures. Financially stable public school systems are vital to commercial, educational, and cultural interests of the community. 105 ILCS 5/1B—2(2) (West 1994). The state and the public therefore share an incentive to achieve financially sound school districts. That goal cannot be achieved if a Panel is unable to compel a local school board to follow its valid directives. Furthering that interest requires an effective and efficient means of removing an uncooperative school board, as protracted removal proceedings would hamper the state's effort to bring a school district to financial health. Notice and a predeprivation hearing, however, are neither oppressive nor extraordinary remedies for the statute's constitutional flaw, and is not so burdensome as to overly hamper the state's efforts.

Next, we must determine whether the procedural due process requirements delineated above are fatal to the statute before us today insofar as the statute does not provide for them. We reiterate that we must interpret statutes as constitutional if we can do so reasonably. *Bonaguro*, 158 Ill. 2d at 397. We note that the language in section 1B—20 does not preclude the Panel from giving the school board notice and a hearing before removing them from office. Section 1B—20 does not insist that the school board be "summarily" removed from office or impose some unconstitutional condition upon the school board's remaining in office. Given that the Panel was free to give notice or hearing if it so chose, section 1B—20 is not facially unconstitutional. The manner in which it was applied in this case, however,

violated the school board members' procedural due process rights by not affording them notice and an opportunity to be heard. Therefore, section 1B—20 is unconstitutional as applied in this case.

## 2. Voters

Appellees also assert that they have a liberty interest in the right to vote that may not be taken away without procedural due process protections. Procedural due process rights are triggered when a fundamental right is being denied. *R.G.*, 131 Ill. 2d at 342; *Tiller*, 138 Ill. 2d at 13-14; *Loudermill*, 470 U.S. at 541, 84 L. Ed. 2d at 503, 105 S. Ct. at 1493. While the right to vote is certainly a fundamental right (*Fumarolo v. Chicago Board of Education*, 142 Ill. 2d 54, 74 (1990)), we have just held that section 1B—20 does not implicate the right to vote. With no interest being interfered with by the state, appellees are not entitled to procedural due process in their position as voters.

## C. Equal Protection

The circuit court held, and appellees maintain, that section 1B—20 violates equal protection because it treats the voters of financially troubled school districts differently from voters living in financially stable school districts. To say that this fact establishes that section 1B—20 violates equal protection, however, is to misunderstand the nature of the principle. The equal protection clause guarantees that those similarly situated will be dealt with in a similar manner. *People v. Warren*, 173 Ill. 2d 348, 365 (1996). The Emergency Financial Assistance Law treats all school districts, and the voters therein, in the same way. It has not been alleged that District No. 189 has been treated differently from any other school district controlled by the Emergency Financial Assistance Law. What occurs in other school districts not controlled by the Emergency Financial As-

sistance Law is immaterial, because those districts are not similarly situated with those that are. Accordingly, appellees' equal protection claim has no merit.

D. Improper Delegation of Legislative Authority

Appellees next assert that section 1B—20 is an unconstitutional delegation of legislative authority because it gives the Panel the authority to arbitrarily remove the school board. The power to make the laws is a sovereign power vested in the legislature, and this power cannot be delegated to an administrative body. *People v. Tibbitts*, 56 Ill. 2d 56, 58 (1973). While the legislature cannot delegate its legislative power to determine what the law should be, it may delegate the authority to execute the law. *Tibbitts*, 56 Ill. 2d at 58-59, quoting *Hill v. Relyea*, 34 Ill. 2d 552, 555 (1966). Proper delegation of authority must provide sufficient standards to guide the administrative body in the exercise of its functions. *Tibbitts*, 56 Ill. 2d at 59-60. However, "[a]bsolute criteria whereby every detail necessary in the enforcement of a law is anticipated need not be established by the General Assembly. The constitution merely requires that intelligible standards be set to guide the agency charged with enforcement." *Hill*, 34 Ill. 2d at 555. To be a proper delegation of legislative authority, the statute in question must identify three factors: (1) the persons or activities potentially subject to regulation; (2) the harm sought to be prevented; and (3) the general means available to the administrator to prevent the identified harm. *People v. Gurell*, 98 Ill. 2d 194, 210-11 (1983).

Section 1B—20 satisfies these requirements. First, it clearly identifies the parties subject to regulation: members, officers, employees, and agents of the school board. Second, with regard to the harm sought to be prevented, we note that the legislature may use broader or more generic language than with the first factor. *Stofer v. Motor Vehicle Casualty Co.*, 68 Ill. 2d 361, 373

(1977). It is sufficient if it is apparent from the statute what the law is trying to prevent. *Stofer*, 68 Ill. 2d at 373. Here, the purpose of the Emergency Financial Assistance Law is to ensure the continued operation of public school districts by returning financially distressed school districts to financial health. Section 1B—20 is intended to prevent the harm that might occur were a recalcitrant school board to refuse to follow a Financial Oversight Panel's orders regarding matters in which the Panel has authority. Third, we observe that section 1B—20 specifically delineates the means available to prevent this harm, including suspension from duty without pay, removal from office, or termination of employment. With the factors satisfied, we find that section 1B—20 is not an improper delegation of legislative authority.

### E. Unconstitutionally Vague

The school board makes its own argument that section 1B—20 is unconstitutionally vague. It asserts that section 1B—20 lacks both the standards and the specificity necessary to limit the Panel's power, instead providing the Panel with the unfettered authority to decide if an order is valid, who will be disciplined, and what that discipline will be. Furthermore, the school board contends, the term "valid order" is not defined in the statute, leaving the school board without notice as to what actions will subject it to discipline.

The question of vagueness and the question of delegation of legislative authority are intertwined (*People v. Gurell*, 98 Ill. 2d at 210) insofar as both address the standards given in the statute to guide the conduct the statute regulates and the administrative body that oversees that conduct. The two concepts, however, use different tests to judge the adequacy of those standards. While the improper delegation of legislative authority concept employs a three-part test

that examines generally the power given to the administrative body to enforce a statute, the vagueness question focuses more on the specificity of the challenged statute's language and the degree of notice as to prohibited conduct that language gives to affected persons. A statute is unconstitutionally vague and violates due process if it " 'fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute' " (*People v. Lang*, 113 Ill. 2d at 454, quoting *Papachristou v. City of Jacksonville*, 405 U.S. 156, 162, 31 L. Ed. 2d 110, 115, 92 S. Ct. 839, 843 (1972)), or if there is an absence of standards restricting the discretion of governmental authorities who apply the law (*Lang*, 113 Ill. 2d at 454). The terms of a statute cannot be so ill-defined that their meaning may be determined at whim rather than by objective criteria; rather, the statute's terms must serve as a guide to those who must comply with the statute. *R.G.*, 131 Ill. 2d at 361. However, mathematical certainty in the language is not required. *People v. Warren*, 173 Ill. 2d at 356. If a statute can be made more definite by a reasonable construction, the court must give the statute that interpretation. *Lang*, 113 Ill. 2d at 455. A statute will not be rendered unconstitutionally vague merely because one could imagine hypothetical situations in which the meaning of some terms might be called into question. *Schiller Park Colonial Inn, Inc. v. Berz*, 63 Ill. 2d 499, 513 (1976).

We conclude that section 1B—20 is not unconstitutionally vague. The terms in section 1B—20 are capable of sufficiently precise interpretation by a person of ordinary intelligence. Section 1B—20 clearly identifies the nature of the discipline and the parties to be disciplined. Furthermore, both the words "valid" and "order" are words of common use and understanding, and section 1B—20 and the statute as a whole describe the Panel's authority with sufficient detail to put all

involved on notice as to what actions are allowed under the statute. Accordingly, section 1B—20 does not fail for being unconstitutionally vague.

### F. Improper Delegation of Judicial Authority

In a one-paragraph argument, Dr. Jenkins asserts that section 1B—20 is an improper delegation of judicial authority because it delegates "quasi-judicial" authority to the Panel and does not provide for judicial review. Dr. Jenkins does not cite cases or otherwise explain how the removal of a school board from office is a judicial function. In fact, one case she does cite holds that the legislature may delegate to administrative bodies the power to impose discretionary civil penalties. *City of Waukegan v. Pollution Control Board*, 57 Ill. 2d 170, 179 (1974). Nor does Dr. Jenkins provide authority for her claim that judicial review of administrative action is necessary here. We find no need to discuss any longer a clearly unsupported argument, and we reject it. See 134 Ill. 2d R. 341(e)(7).

### CONCLUSION

Section 1B—20 of the Emergency Financial Assistance Law is not invalid on its face, though it is unconstitutional as applied to the school board of East St. Louis District No. 189 for failure to provide the school board members with procedural due process before their removal from office. The judgment of the circuit court is therefore reversed, and the cause is remanded to the circuit court with directions to order that the Panel give the school board notice, a hearing, and an opportunity to respond to and contest the charges.

*Reversed and remanded.*

JUSTICE MILLER, concurring in part and dissenting in part:

I agree with the majority opinion, except for its

discussion of the question whether the individual school board members have a right to receive pretermination hearings prior to their removal from the board. Unlike the majority, I do not believe that due process compels such hearings in this case, and accordingly I dissent from the portion of the majority opinion recognizing that right. 178 Ill. 2d at 415-22.

As the majority notes elsewhere in its opinion, the dismissal provisions of section 1B—20 of the School District Financial Oversight Panel and Emergency Financial Assistance Law (105 ILCS 5/1B—20 (West 1994)) took effect in 1989, before the present board members were elected to office. 178 Ill. 2d at 414-15. Because the present members were elected under a regime by which a member "by definition was one who could be removed from office for failure to obey a valid Panel order" (178 Ill. 2d at 415), I do not believe that the members can now claim a property right in their positions.

In support of its conclusion, the majority points to the provision of a specified term of office for school board members and to a gradual evolution in constitutional law, which has come to recognize greater rights in public employment and office. Neither ground is persuasive. Providing for a defined term of office does not by itself establish a vested property right in the office. See *Adams v. Walker*, 492 F.2d 1003, 1006-07 (7th Cir. 1974). In *Scott v. Department of Commerce & Community Affairs*, 84 Ill. 2d 42, 52 (1981), this court expressed some doubt, but did not decide, whether unpaid, part-time officials appointed to serve fixed terms of office—like the school board members here—were entitled to a trial-type proceeding prior to their removal from a public body.

As to the evolution of this area of law, it should be noted that modern cases from other jurisdictions continue to recognize that a property right does not

automatically attach to a public office; rather, the existence of a property right depends on whether one is given by the terms and conditions of the office in question and by other relevant provisions of state or local law. See *Adams*, 492 F.2d at 1006; *Leek v. Theis*, 217 Kan. 784, 811, 539 P.2d 304, 325-26 (1975); *Lanza v. Wagner*, 11 N.Y.2d 317, 324, 183 N.E.2d 670, 673, 229 N.Y.S.2d 380, 385 (1962); *Roth v. Cuevas*, 603 N.Y.S.2d 962, 973, 158 Misc. 2d 238, ___ (1993); *State ex rel. Battin v. Bush*, 40 Ohio St. 3d 236, 242, 533 N.E.2d 301, 307 (1988).

The cases cited by the majority in support of its holding are not to the contrary. In *Crowe v. Lucas*, 595 F.2d 985 (5th Cir. 1979), state law provided that the incumbent's term of office as alderman was for four years and until a successor could be duly elected and qualified. The incumbent had obtained a court order invalidating the results of the election at which he was defeated, and that order was still in effect later, when he attempted to remain in office. In those circumstances, the court found that no successor had been duly elected and qualified, and the court concluded that under state law the incumbent was entitled to continue to serve in office. In *Collins v. Morris*, 263 Ga. 734, 735-36, 438 S.E.2d 896, 897 (1994), also cited by the majority, the court stated that an elected official has a property interest in the office that is entitled to due process protection. The court went on to acknowledge, however, that "it is also true that an official takes his office subject to the conditions imposed by the terms and nature of the political system in which he operates." (Internal quotation marks omitted.) *Collins*, 263 Ga. at 735, 438 S.E.2d at 897. In *Foley v. Kennedy*, 885 P.2d 583 (Nev. 1994), another case cited by the majority, the court's reference to an elected officer's property interest in the office came in the context of a discussion of recall proceedings under state law and

the prevailing official's recovery of costs arising from the proceeding.

I believe that resolution of this issue must proceed on a case-by-case basis, and a court faced with this question must carefully examine the terms and conditions of the particular office involved. The present board members took office subject to the measures contained in section 1B—20 of the Emergency Financial Assistance Law. The statutory scheme provides no property interest in the office, and therefore I cannot join my colleagues today in recognizing a property interest in the positions. Accordingly, I dissent from that portion of the majority opinion.