Rule 23 Order filed 
NO. 5-99-0012

July 26, 2000;

Motion to publish granted 
IN THE

August 17, 2000.

Opinion filed 
APPELLATE COURT OF ILLINOIS

August 17, 2000.

FIFTH DISTRICT

________________________________________________________________________

EDNA ALLEN, individually and in her capacity as a )  Appeal from the

member of the Board of Trustees of Metropolitan )  Circuit Court of

Community College, and GORDON D. BUSH, )  St. Clair County.

)

     Plaintiffs-Appellants, )

)

v. )  No. 98-CH-236

)

ILLINOIS COMMUNITY COLLEGE BOARD, )  Honorable

)  Scott Mansfield,

     Defendant-Appellee. )  Judge, presiding.

________________________________________________________________________

JUSTICE HOPKINS delivered the opinion of the court:

This case stems from the formation and subsequent dissolution of an experimental community college district, which is now known as Metropolitan Community College (the College), pursuant to the Public Community College Act (the Act) (110 ILCS 805/1-1 
et seq.
 (West 1998)).  Edna Allen and Gordon D. Bush (plaintiffs) filed the complaint in their  individual capacities as registered voters and taxpayers of the district.  Allen also filed the complaint in her official capacity as a member of the board of trustees of the College.  Plaintiffs argue that the trial court improperly dismissed their complaint for a failure to state a cause of action.  Plaintiffs claim that their complaint stated a cause of action for the following reasons:  (1) that the Act is unconstitutionally vague; (2) that the Act deprived plaintiffs of their property without due process of law; (3) that the Act allows for an improper delegation of legislative authority to an administrative agency; (4) that the Act unconstitutionally infringes upon plaintiffs' right to vote; (5) that defendant, the Illinois Community College Board (ICCB), abused its discretion in dissolving the College district; (6) that the trial court improperly denied plaintiffs' request for injunctive relief; and (7) that the trial court erred in dismissing count II of plaintiffs' complaint because there was no pending motion to dismiss count II.  We affirm the dismissal of the complaint.

FACTS

The College is the successor to the State Community College of East St. Louis (State Community College), which was formed over 30 years ago by our legislature as an experimental community college district.  See Public Act No. 76-724, 1969 Ill. Laws 1489; 110 ILCS 805/2-12.1 (West 1998).  Unlike other community colleges, the State Community College was maintained and operated by the ICCB and was funded entirely by the State of Illinois.  See 110 ILCS 805/2-12.1(a) (West 1998).  

This State-controlled arrangement ended when the Act was amended to provide for a voting referendum on whether the experimental district should be abolished.  See 110 ILCS 805/2-12.1(c) (West 1998).  Since the vote was favorable, the College was established in the place of the experimental district.  See 110 ILCS 805/2-12.1 (West 1998).  In 1995, a board of trustees was elected for the College.  Allen was elected as a member of that board.  She and Bush are both residents and taxpayers of the district.  Bush is also the mayor of East St. Louis, a city within the district of the College.  

On May 15, 1998, the ICCB voted to place the College on "recognition with conditions" status.  The Act creates a system under which the ICCB recognizes those community colleges that meet the standards in the Act and its accompanying regulations.  Section 2-15 provides, "The [ICCB] shall grant recognition to community colleges which maintain equipment, courses of study, standards of scholarship[,] and other requirements set by the [ICCB]."  110 ILCS 805/2-15 (West 1998).  The recognition standards by which the community colleges are evaluated are the "applicable statutes within the *** Act and applicable ICCB rules."  23 Ill. Admin. Code §1501.114(d) (West 1996).  

Plaintiffs alleged in their pleadings that the ICCB placed the College on recognition with conditions status because the College failed to meet certain recognition standards set by ICCB, in particular, that the College failed to submit a financial audit for fiscal year 1997, that the College failed to properly report student enrollments for State-funding programs, and that the College failed to develop a financial-accounting system that is essential for the sound fiscal management of the institution.  Plaintiffs also alleged that the ICCB appointed a special study committee (the committee), pursuant to section 2-15(5) of the Act (110 ILCS 805/2-15(5) (West 1998)), that the committee submitted a report to the ICCB recommending that the College be dissolved, that the ICCB adopted the report of the committee, and that the ICCB passed a motion, effective January 1, 1999, dissolving the College.

Plaintiffs alleged that the committee's report was "seriously deficient and flawed" because it was:

"based, in part, upon improper criteria, namely:  That District 541 [the College] did not meet the statutory requirements that a community college district have an equalized assessed valuation of $150,000,000 and have a population base of 60,000.  These criteria were improper considerations, in that[] the [l]egislature specifically exempted District 541 from having to satisfy these two requirements."

See 110 ILCS 805/2-12.1(c)(1) (West 1998).

Plaintiffs alleged that ICCB's use of the committee's report "to justify or support its action to dissolve [the College] constituted an arbitrary, capricious[,] and unreasonable exercise of its purported powers and authority and an abuse of its discretion."  They alleged also that the financial administrator was operating under a conflict of interest in that it was in the position of evaluating the College's performance at the same time that it was responsible for the day-to-day operations of the College.   

Plaintiffs further alleged certain constitutional violations:  that the ICCB's dissolution of the College deprived plaintiff Allen of her due process rights in that neither she nor any of the trustees were afforded sufficient notice or a hearing; that ICCB's grant of administrative authority over the College to the financial administrator (see 110 ILCS 805/2-

15 (West 1998)) constitutes "an unlawful delegation of legislative authority"; that the statute is "unconstitutionally vague and overbroad in that there is an absence of sufficient standards restricting the discretion of ICCB in applying the emergency powers enumerated in [section 2-15]"; and that the statute unconstitutionally deprived the voters of the College district of their property without due process of law and in violation of equal protection.    

Plaintiffs requested injunctive relief from the dissolution of the college district and requested the court to enter a declaratory judgment "making binding declarations of rights, duties[,] and powers with the force of final judgments regarding the constitutionality, construction, interpretation[,] and application of state statutes, and in particular, [section 2-

15] of the *** Act."  Finally, plaintiffs alleged that section 2-12.1(d) of the Act (110 ILCS 805/2-12.1(d) (West 1998)) mandated the ICCB to convey to the College all of the real estate formerly owned by the State Community College.

On October 20, 1998, the trial court entered an order finding, 
inter alia
, that the Act is not unconstitutionally vague.  The court stated, "Mathematical certainty is not required of statutory language, and the court, having reviewed the statute, finds that its terms are reasonably apprehendable."  The court also found as follows:

"[P]laintiff Edna Allen has no due process claim as a member of the board to any property right except that set forth by the Court in [
East St. Louis Federation of Teachers, Local 1220, American Federation of Teachers, AFL-CIO v. East St. Louis School District No. 189 Financial Oversight Panel
, 178 Ill. 2d 399 (1997) (
Local 1220
)]; that is, her property interest in her position as an elected official.  The 
Local 1220
 case held that a pretermination notice was required before elected school board members were removed from their positions pursuant to the provisions of a pertinent statute.  Here, the ICCB has the authority to dissolve or reorganize the [College], but there is no allegation *** that plaintiff Allen has actually been removed from her elected position without notice.  This portion of the complaint is denied.

The court further finds that [the College] and its board, as a unit of local government, has no due process rights."  

The court found that the actions of the ICCB did not infringe upon  the plaintiffs' right to vote.  Additionally, the court found that the statute did not improperly delegate legislative authority to the ICCB:

"[T]he legislature may delegate authority to execute the law, and absolute criteria whereby every detail necessary in the enforcement of a law is anticipated need not be established.  The statute in question is sufficiently specific to define the scope of the law the ICCB is charged with executing with reasonable precision, and the court finds no constitutional infirmity in it."

Finally, the court determined that the statute does not violate due process.  

The court denied plaintiffs' request for a preliminary injunction and dismissed the complaint for the failure to state a cause of action.  Plaintiffs then filed a motion to reconsider the dismissal of their complaint and filed their first amended complaint.  On  December 4, 1998, the trial court denied plaintiffs' motion to reconsider, finding that plaintiffs failed to show that they had a "clearly ascertainable right to the relief requested, that they would suffer irreparable harm, or that they were likely to succeed on the merits of the case."  The court again found the statute in question to be constitutional.  

This timely appeal followed.

STANDARD OF REVIEW

Where the trial court dismisses a complaint for the failure to state a cause of action, the standard of review is 
de novo
.  See 
Doe v. McKay
, 183 Ill. 2d 272, 274 (1998).  On review, the court considers whether the complaint, when viewed in the light most favorable to the plaintiff, alleges facts sufficient to state a cause of action.  See  
Vernon v. Schuster
, 179 Ill. 2d 338, 344  (1997).  When deciding if the complaint contains sufficient facts to state a cause of action, all well-pleaded facts and all reasonable inferences from those facts are taken as true.  See 
Mount Zion State Bank & Trust v. Consolidated Communications, Inc.
, 169 Ill. 2d 110, 115 (1995).  However, conclusions of law or fact that are unsupported by specific factual allegations are not taken as true.  See 
Anderson v. Vanden Dorpel
, 172 Ill. 2d 399, 408 (1996).

The 
de novo
 standard also applies because plaintiffs challenged the constitutionality of the Act.  See 
Russell v. Department of Natural Resources
, 183 Ill. 2d 434, 441 (1998).  Where the constitutionality of a statutory provision is challenged, the courts presume that the legislature intended to comply with the constitution.  See 
Tully v. Edgar
, 171 Ill. 2d 297, 313 (1996).  As a result, the party challenging a statute must rebut the presumption of constitutionality by clearly establishing that the statute violates the constitution.  See 
Russell
, 183 Ill. 2d at 441.  When deciding if that burden has been met, the courts have a duty to sustain legislation as constitutional whenever possible.  See 
People ex rel. Devine v. Murphy
, 181 Ill. 2d 522, 527 (1998).

The situation in this case is slightly different, however, since the trial court made declaratory findings on the constitutional issues that seem to contradict a finding that plaintiffs failed to state a cause of action.  Nevertheless, since the trial court dismissed the complaint for the failure to state a cause of action, we consider the trial court to have found that plaintiffs' complaint failed to rebut the presumption of constitutional validity, even though the court did not make specific findings in that regard.  

ANALYSIS

At issue is the legislature's right to define, create, and abolish community college districts.  The legislature's right to create, change, and dissolve school districts, whether elementary, secondary, or postsecondary, has been thoroughly resolved.  Thus, we begin our analysis with a brief overview of this area of the law.

In 1948, the supreme court decided the pivotal case of 
People v. Deatherage
, 401 Ill. 25 (1948).  In 
Deatherage
, the court determined:

"Where issues before this court involve the constitutionality of statutes permitting the creation of school districts, the court is necessarily limited in decision to a narrow field.  This is true because of the inherent power of the legislature and section 1 of article VIII of the [1870 Illinois] constitution.  The section simply operates as a mandate to the legislature to exercise its inherent power to carry out a primary, obligatory concept of our system of government, 
i.e.
, the children of the State  are entitled to a good common-school education, in public schools, and at public expense.  Prior decisions of this court have held the section to also place upon the legislature two limitations when implementing that concept: the schools established *** must be free and must be open to all without discrimination.  [Citations.]  This court has consistently held the section to impose the two limitations, and no more.  [Citation.]   ***

A community unit school district, like any other school district established under enabling legislation, is entirely subject to the will of the legislature thereafter.  With or without the consent of the inhabitants of a school district, over their protests, even without notice or hearing, the State may take the school facilities in the district, without giving compensation therefor, and vest them in other districts or agencies.  
The State may hold or manage the facilities directly or indirectly
.  The area of the district may be contracted or expanded, it may be divided, united in whole or in part with another district, and 
the district may be abolished.  All this at the will of the legislature
.  The 'property of the school district' is a phrase which is misleading.  The district owns no property, all school facilities, such as grounds, buildings, equipment, etc., being in fact and law the property of the State and subject to legislative will. [Citation.]"  (Emphasis added.)  
Deatherage
, 401 Ill. at 30-32.  

The law is the same under the 1970 Illinois Constitution.  See 
Committee for Educational Rights v. Edgar
, 174 Ill. 2d 1, 32 (1996) ("the question of whether the educational institutions and services in Illinois are 'high quality' is outside the sphere of judicial function"); 
Lewis E. v. Spagnolo
, 186 Ill. 2d 198, 209 (1999) (determinations regarding quality of education are solely for the legislature to decide).  Additionally, in 
Spagnolo
, the court determined that "education is not a fundamental right protected by the federal constitution."  
Spagnolo
, 186 Ill. 2d at 211.  The court noted, "'The [United States] Constitution is a charter of negative liberties; it tells the state to let people alone; it does not require the federal government or the state to provide services, even so elementary a service as maintaining law and order.'"  
Spagnolo
, 186 Ill. 2d at 212, quoting 
Bowers v. DeVito
, 686 F.2d 616, 618 (7th Cir. 1982).

Moreover, the public school system protected by the 1970 Illinois Constitution does not include community colleges.  "There is no authority to suggest that article X of the Illinois Constitution applies to the State's operation of community colleges."  
Espinosa v. Board of Trustees of Community College District No. 508
, 265 Ill. App. 3d 504, 507 (1994).  Community college districts are created by the legislature pursuant to its authority to create public corporations, not under any provision of the Illinois Constitution.  See 
Espinosa
, 265 Ill. App. 3d at 507.  Thus, the rules pertaining to public elementary and secondary schools do not apply to community colleges, except to the extent that if we cannot review legislative determinations as to public grade and high schools, we most surely cannot review legislative determinations as to community colleges.  

With these rules in mind, we turn to the case at bar.  It is clear that plaintiffs have no  rights, under the United States Constitution or under the current Illinois Constitution, to the continuation of the College.  Since the State was under no obligation to establish the College in the first place, the State is under no greater obligation to maintain the College after its establishment.  Plaintiffs have alleged nothing to rebut the presumption of constitutionality, and more importantly, there is nothing that they could allege to show a constitutional violation.  There is no constitutional right to a college education provided by the State.  The people who reside in the College district have no property rights in the continuation of the college.  

Even Allen, in her capacity as a member of the board of trustees of the College, has no constitutional right to the continuation of that position.  The trial court found that the complaint did not allege that Allen was improperly notified about the pending dissolution and the resulting loss of her seat on the board of trustees, but that finding is not entirely correct.  Plaintiffs alleged in their first amended complaint that "the action by the ICCB to dissolve [the College] and thereby remove the [College's] Board of Trustees, including *** Allen, from office, effective January 1, 1999, was taken in violation of *** Allen's right to due process, in that neither sufficient notice nor a hearing" was afforded to Allen prior to ICCB's decision to dissolve the College.  Nevertheless, the record is clear that Allen in fact received notice of ICCB's decisions about the College, because Allen and Bush filed this lawsuit before the ICCB decided to dissolve the College.  Under these circumstances, the notice given was reasonable. 

Plaintiffs claim that Allen was also entitled to a hearing before she lost her position as a member of the board of trustees.  For this claim, plaintiffs cite 
Local 1220
, 178 Ill. 2d 399.  In 
Local 1220
,  the supreme court held that an individual who is elected as a member of a local elementary-school board of education has a right to notice and a hearing before his or her elected position is terminated.  
Local 1220
, 178 Ill. 2d at 420.  The rule set forth in 
Local 1220
 does not apply under the facts of this case, however.  

In 
Local 1220
, a financial oversight panel (the Panel) was appointed to exercise financial control over East St. Louis School District No. 189.  The Panel voted to remove each of the school board members from office after they refused to follow the Panel's order to discharge the school's superintendent.  See 
Local 1220
, 178 Ill. 2d at 405.  The difference in the case at bar is that the ICCB did not vote to remove Allen or the other members of the board of trustees but, rather, decided to dissolve the school district, which logically and incidentally results in eliminating the board of trustees.  The 
Local 1220
 case does not stand for the proposition that the dissolution of a community college district entails the need for hearings as to whether the board of trustees for that community college district should remain after the dissolution of the College.  Such a rule would be ridiculous, as well as contrary to the settled law expressed in 
Deatherage
 and its progeny.  Therefore, we hold that the trial court properly dismissed the complaint as to Allen in her capacity as a member of the board of trustees.  

Plaintiffs claim that they stated a cause of action that the statute improperly delegates legislative authority to an administrative agency.  The main case plaintiffs cite in support of this argument is 
People v. Tibbitts
, 56 Ill. 2d 56 (1973).  
Tibbitts
 provides that an administrative agency cannot be given arbitrary or absolute powers or the "unguided discretion to apply or withhold the application of the law or to say to whom a law shall or shall not be applicable."  
Tibbitts
, 56 Ill. 2d at 59.  Additionally, "due process of law requires  that an act shall not be vague, indefinite[,] or uncertain and must provide sufficient standards to guide the administrative body in the exercise of its functions."  
Tibbitts
, 56 Ill. 2d at 56-60.  Within these parameters, however, the "State may hold or manage [school] facilities directly or indirectly."  
Deatherage
, 401 Ill. at 32.  Thus, the legislative delegation of authority to the ICCB is improper only if the authority delegated is arbitrary or absolute or the standards provided to guide the ICCB in its mission are excessively vague and uncertain.

We agree with the trial court that plaintiffs failed to rebut the presumption that the statute is specific and definite enough to pass constitutional muster.  "The question of vagueness and the question of delegation of legislative authority are intertwined [citation] insofar as both address the standards given in the statute to guide the conduct the statute regulates and the administrative body that oversees that conduct."  
Local 1220
, 178 Ill. 2d at 424.  

Plaintiffs did not rebut the presumption of proper legislative delegation of authority, because the Act clearly identifies all three necessary factors:  (1) the activity to be regulated is the operation of community colleges, as defined by the Act (see 110 ILCS 805/1-2, 2-12 (West 1998)); (2) the harm sought to be prevented is a community college failing to adhere to the "standards of scholarship and other requirements set by the State Board [ICCB]" (110 ILCS 805/2-15 (West 1998)); and (3) the general means available to the ICCB to prevent the identified harm is set forth throughout the Act, but most specifically in section 2-15.  See 
Local 1220
, 178 Ill. 2d at 423.  

Plaintiffs also failed to establish that the Act is unconstitutionally vague because they did not show that it "fails to give a person of ordinary intelligence fair notice" of the conduct forbidden by the statute, nor did they show that the statute is so lacking in standards that the ICCB has no guidance in how to apply the law.  
Local 1220
, 178 Ill. 2d at 425.  As the trial court aptly stated, "mathematical certainty is not required."  See 
Local 1220
, 178 Ill. 2d at 425. 

We agree with the trial court's finding that the terms of the Act are capable of sufficiently precise interpretation by a person of ordinary intelligence, and therefore, the trial court properly dismissed plaintiffs' complaint for the failure to state a cause of action for unconstitutional vagueness or for improper legislative delegation of authority.   

Plaintiffs also alleged in their complaint that the ICCB abused its discretion by acting arbitrarily, capriciously, and unreasonably.  This portion of the complaint also fails to state a cause of action.  The complaint listed the reasons the ICCB placed the College on recognition-with-conditions status and eventually decided to dissolve the College:  the failure to  submit a financial audit for fiscal year 1997, the failure to properly report student enrollments for State funding programs, and the failure to develop a financial-accounting system that is essential for the sound fiscal management of the institution.  Since plaintiffs alleged that the reasons for the lowered status and eventual dissolution were the College's failure to comply with the regulations pertaining to community colleges, plaintiffs have admitted that the ICCB's actions in this regard were not an abuse of discretion.  Since we do not review the wisdom of the legislature in developing a particular scheme for regulating schools, whether elementary, secondary, or postsecondary (see 
Deatherage
, 401 Ill. at 30-33; 
Espinosa
, 265 Ill. App. 3d at 507), we cannot find an abuse of discretion in the ICCB following the rules and regulations set forth and adopted by our legislature.

Plaintiffs additionally claim that the actions of the ICCB are tainted by the committee's use of improper criteria for its recommendation that the College be dissolved.  Plaintiffs alleged that the committee found in part that the district did not have enough residents or a sufficient tax basis to sustain itself, even though the College is statutorily exempted from those requirements.  Plaintiffs point out that the Act allows the College to exist "notwithstanding any minimum population, equalized assessed valuation[,] or other requirements provided by Section 3-1 or any other provision of this Act for the establishment of community college districts" (110 ILCS 805/2-12.1(c)(1) (West 1998)).  Plaintiffs misconstrue the committee's reference to the population and tax-base criteria.

Upon a close reading of the report, it is clear that the committee did not rely upon those criteria solely but, rather, simply stated the facts that, unlike other community colleges, the experimental district of the College does not have a sufficient tax or population base to sustain itself without special consideration from the State.  When viewed in this light, the relevance of the reference is clear and proper:  if the district from which the College draws its students is too small and too poor to sustain the college without special consideration from the State, then the College should be required to strictly follow the rest of the rules applying to community colleges.  Since plaintiffs admit in their complaint that the College did not follow those rules and regulations, the ICCB's reliance upon and adoption of the committee's report, including its reference to the College's lack of a sufficient population and tax base, does not constitute an abuse of discretion.

The trial court was also correct in denying plaintiffs' request for injunctive relief.  Injunctive relief is proper only where the party seeking it demonstrates:  "(1) a clearly ascertainable right that needs protection; (2) that the party would suffer irreparable injury without the protection of the injunction; (3) the absence of an adequate remedy at law; and (4) a likelihood of success on the merits."  
Continental Cablevision of Cook County, Inc. v. Miller
, 238 Ill. App. 3d 774, 787 (1992).  Plaintiffs in the case at bar have failed to demonstrate any of the necessary elements.  In particular, since plaintiffs have no right to the continuation of the College (see 
Deatherage
, 401 Ill. at 33), they have no right to injunctive relief to enjoin the ICCB from dealing with the College as it sees fit, including the dissolution of the College and the resultant elimination of the board of trustees.          

Finally, plaintiffs contend that the trial court erred in dismissing count II of their complaint, which alleged that ICCB was under a duty to convey the real estate that was formerly held by the experimental college district prior to its abolition and the formation of the College in its place.  Based upon our ruling that plaintiffs have failed to state a cause of action as to any impropriety on the part of the ICCB in dissolving the College, and their failure to state a cause of action as to the unconstitutionality of the Act, we cannot find any further right of the College to any property.  Since the ICCB was properly authorized by the legislature to dissolve the College for its failure to comply with the relevant rules and regulations, there can be no further right of the College to the conveyance of any property formerly held by its predecessor.  The trial court properly dismissed count II of plaintiffs' complaint.

CONCLUSION

For all of the reasons stated, we affirm the trial court's dismissal of plaintiffs' complaint.

Affirmed.   

CHAPMAN and RARICK, JJ., concur.